**In re Disciplinary Proceedings against Loring J. WHITESIDE.**

**No. 187, Docket 31654.**

United States Court of Appeals Second Circuit.

Argued Nov. 22, 1967.

Decided Nov. 28, 1967.

Loring J. Whiteside, pro se.

Jon O. Newman, U. S. Atty. for the District of Connecticut, for appellee.

Before LUMBARD, Chief Judge, and KAUFMAN and FEINBERG, Circuit Judges.

PER CURIAM:

This is an appeal by Loring J. Whiteside from an order of the District Court for the District of Connecticut, Blumenfeld, J., disbarring appellant from practice before that Court. In 1913 Mr. Whiteside was admitted to the Bars of the State of New York, the United States District Court for the Southern District of New York, and this Court, but, with two minor exceptions, he did not practice law after he moved to Connecticut in 1921. On February 17, 1964, Mr. Whiteside moved for admission and was admitted to the Bar of the United States District Court for the District of Connecticut in order to represent the plaintiffs in the case of Tkaczyk v. Gallagher et al., D.C., 265 F.Supp. 791.[1] On August 5, 1966 he filed a 12-page complaint in the District Court charging a conspiracy between 22 individuals, comprising in the main lawyers, a state's attorney, a deputy coroner, and various Connecticut judges

---

1. Appellant had informally advised the Tkaczyks in prior litigation between the parties in the Connecticut courts. The Tkaczyks had attempted to enjoin the husband of their deceased daughter from cremating her body, contending that their religious beliefs required underground burial. In addition, they claimed that he had murdered the deceased.

including all 5 judges of the Connecticut Supreme Court of Errors. The following are typical of the allegations in the complaint which Judge Blumenfeld[2] found grossly disrespectful of the judicial office and for which Whiteside was disbarred: "In numerous instances certain Superior Court Judges, certain State Supreme Court Justices and one certain probate judge entered into the conspiracy to conceal the murder [of the Tkaczyk's daughter] and perform overt acts of their own, attributable in some instances to their desire to protect from exposure the increasing number of prominent attorneys and of the State Judiciary and others who had gradually been sucked in and become involved in the matter * * the transcript disclosed a Superior Court judge aiding and abetting DeAndrade in attempted subornation of perjury and an attempt to extort a ransom under false pretenses."

■■ Mr. Whiteside has stated that the allegations against the state judges were based only on the public record of their actions in connection with the Tkaczyk's lawsuit. He is of the view that by exercising their judicial judgment—separately or collectively—adversely to his clients, they became "conspirators" in concealing the facts concerning the alleged murder. In the conceded absence of any facts tending to show anything more than that the rulings complained of, at worst, might have been erroneous, the district court was justified in finding that these grossly disrespectful allegations, repeatedly made, were so totally unfounded and so clearly in violation of the Canons of Professional Ethics[3] as to justify disbarment.[4]

We do not pass judgment on whether appellant behaved as he did because of his long absence from the law or because of faulty judgment. But it is clear that in addition his conduct in presenting these wholly unsupported charges is such as to put in doubt his ability to exercise the judgment which advocacy requires.

Affirmed.[5]

2. The other 3 judges of the District Court for the District of Connecticut refused to hear the disciplinary proceedings because appellant indicated displeasure with them.

3. Canon 1 of the Canons of Professional Ethics of the American Bar Association provides: "It is the duty of the lawyer to maintain towards the Courts a respectful attitude, not for the sake of the temporary incumbent of the judicial office, but for the maintenance of its supreme importance. * * *" Canon 32 provides: "No client * * * is entitled to receive, nor should any lawyer render any service or advice involving * * * disrespect of the judicial office * * *."

4. Appellant suggests that the rule of New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), immunizes him from disciplinary proceedings for his misconduct in persisting to make broadside attacks of grossly disrespectful proportions. We need not decide whether the *New York Times* rule applies to disciplinary proceedings against a lawyer for statements made in the course of litigation since, in any event, the allegations made by appellant would not be protected under that rule. The appellant, although given the opportunity to do so, adduced no facts to support his claim that the judges who ruled against his clients were conspiring to conceal the facts concerning an alleged murder. Surely to make such accusations—with no facts to substantiate them—simply because the judges ruled against his clients, exhibits a reckless disregard of the truth which would preclude protection under the rule of *New York Times*.

5. In view of appellant's advanced age and his infrequent practice of law, we would not voice any objection if the district court considered it appropriate to modify its judgment, and suspend the appellant from practice before that Court for a period of time.