Dan A. SPENCER, Complainant,

v.

Honorable John A. DIXON, Jr., A. Leon Hebert, Walter G. Arnette, Pat W. Browne, Sr., A. K. Goff, Jr., James H. Drury, and Thomas O. Collins, Jr.

Civ. A. No. 13676.

United States District Court
W. D. Louisiana,
Shreveport Division.

Sept. 30, 1968.

Dan A. Spencer, Shreveport, La., Benjamin E. Smith, New Orleans, La., Dennis R. Whalen, Baton Rouge, La., for complainant.

Neil Dixon, Herschel M. Downs, Shreveport, La., James J. Thornton, Jr., Johnston, Johnston & Thornton, Shreveport, La., for defendant John A. Dixon, Jr.

A. K. Goff, Jr., Ruston, La., A. Leon Hebert, Baton Rouge, La., for defendants A. Leon Hebert, Walter G. Arnette, Pat W. Browne, Sr., A. K. Goff, Jr., James H. Drury and Thomas O. Collins, Jr.

## OPINION ON MOTION TO REINSTATE SUMMARY JUDGMENT

BEN C. DAWKINS, Jr., Chief Judge.

Complainant here, Dan A. Spencer, is approximately 30 years of age and a fairly recent admittee (1964) of the Louisiana Bar, practicing in Shreveport, Louisiana. The original sole defendant was Honorable John A. Dixon, Jr., a judge of the First Judicial District Court for the State of Louisiana, a trial court of general jurisdiction for Caddo Parish, Louisiana.

Complainant actively represented, as counsel of record, the plaintiff in a separation (divorce type) suit styled "Hopkins v. Hopkins," in that Court.

March 20, 1968, that case was heard before Judge Dixon on application for judgment by default. After the evidence was closed, judgment was rendered in favor of defendant.

Complainant filed on the same day (or the next day, the Record being unclear on this) a motion before this State Court requesting recusation of Judge Dixon. This motion for recusation contained, among other assertions, the following language:

"The Plaintiff herein, LOUIS P. HOPKINS, JR. and his chief witness in this case, Mr. Charles Anderson, III, are presently engaged in the process of attempting to have Judge Dixon removed from office as being unfit therefor by virtue of corruption, favoritism, [op]pression, and misfeasance in office."

March 26, 1968, complainant was cited by defendant, Judge Dixon, for contempt of court. This citation charged that complainant filed a plea (the motion for recusation partially quoted above) containing scandalous, insulting, and abusive language in irrelevant criticism of a judge, impairing the dignity of the court and respect for its authority in violation of the laws of Louisiana.

The contempt rule was made returnable March 29, 1968. March 28, complainant filed this action in which he sought to enjoin any further proceedings upon the contempt citation issued by Judge Dixon. Additionally, he sought $100,000.00 damages for alleged violation of his constitutional rights. Jurisdiction was claimed under 28 U.S.C. §§ 1331, 2281, and 2201.

In addition to the foregoing, complainant alleged that Articles 221, et seq., of the Louisiana Code of Civil Procedure are unconstitutional, both on their face and as attempted to be applied to complainant. He asserted that these Articles are unconstitutional on their face in that they are an overly-broad restriction of freedom of speech guaranteed him by the Constitution of the United States through the First and Fourteenth Amendments. He further asserted that

interpretation of these Articles by the Louisiana Supreme Court in Spencer v. Dixon, 248 La. 604, 181 So.2d 41 (Nov. 8 and Dec. 13, 1965), creates a situation whereunder these Articles are unconstitutionally applied against complainant in that they limit his right of free speech to make a truthful charge in a pleading against a judge.

Moreover, complainant further charged that the citation against him was violative of his Fifth, Sixth, and Fourteenth Amendment rights in that it subjected him to being adjudged in contempt by the same judge personally attacked by him in a pleading before that court. Broadly, the constitutional issues sought to be raised by complainant are " * * * whether an attorney or any other person may be punished by contempt or otherwise for truthful criticism of a judge or court." He asserted that under the law of Louisiana, as interpreted by its Supreme Court, he would have no right to defend his contempt citation on the ground of truthfulness of the allegations made by him, nor would he have any right to introduce evidence in connection with the citation. He asserted that the citation was issued with no expectation of securing a valid conviction; that Judge Dixon was acting not as a judge alone, but as judge, prosecutor, and witness. He alleged that he was threatened with irreparable injury and that he had no available State Court relief. As noted, he also sought damages against Judge Dixon for $100,000 by virtue of the violation of his "constitutional rights."

The complaint sought the issuance of a temporary restraining order under authority of Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, and 14 L.Ed.2d 22. It also requested convocation of a three-judge court to hear these issues under authority of 28 U.S.C. § 2281.

The temporary restraining order was issued as prayed. March 29, 1968, this order was amended so that, upon assignment by the Louisiana Supreme Court of any other disinterested, qualified State Court judge than Judge Dixon, for hearing of the contempt citation, the order would be recalled and vacated. April 11, 1968, upon application properly made by Judge Dixon, the Louisiana Supreme Court granted the application for recusation and designated Honorable R. B. Williams, Judge of the Tenth Judicial District Court (for Natchitoches and Red River Parishes), of Louisiana, to hear this contempt citation.

Judge Dixon then filed a motion for summary judgment, which, on April 17, 1968, was granted. Complainant thereafter timely moved for a new trial and/or rehearing here and requested that such be heard before a three-judge court. Such was ordered, and the original restraining order reinstated. Concerning propriety of convocation of a three-judge court, we immediately submitted the entire record to Honorable John R. Brown, Chief Judge of the United States Court of Appeals for the Fifth Circuit. May 23, 1968, in response to this submission, Judge Brown made the following determination:

> "It does seem to me after a quick review of this file, that it is the part of administrative wisdom to designate a 3-judge court who will in turn determine whether it is a 3-judge matter."

An order accordingly was issued by him May 27, 1968, convening such three-judge court.

August 14, 1968, complainant purported to file an Amended Complaint, which never was allowed or ordered filed, because no request or suggested order therefor was made. This pleading purported to add additional parties defendant, namely, A. Leon Hebert, Walter G. Arnette, Pat W. Browne, Sr., A. K. Goff, Jr., James H. Drury, and Thomas O. Collins, Jr., being all members of the Louisiana Supreme Court Committee on Professional Ethics and Grievances. This pleading alleged, that as a result of the circumstances described in the reported opinion of Spencer v. Dixon, supra, disciplinary proceedings for sanctions against him are pending before this Committee; that these disciplinary proceedings likewise arise out of complainant's allegation

of dishonesty against the State judiciary (in that case, the Louisiana Supreme Court) contained in a pleading and verbal statement before that Court to the effect that all of the judges thereof were dishonest (See 181 So.2d 43, 45, 46); that complainant was denied the right in that case and is being denied the right here to prove the truth of his allegations as a defense to these disciplinary proceedings and that, consequently, his constitutional guarantees of freedom of speech are impaired or threatened to be impaired to his detriment.

Such would-be Amended Complaint is replete with what appear to be scurrilous attacks on the integrity and honesty not only of defendant, Judge Dixon, but also of all members of the Supreme Court of Louisiana, of the Clerk of Court of the First Judicial District Court, and by implication various others, including the members of the Ethics and Grievances Committee:

"Complainant further shows that the knowledge by the defendant of complainant's opinion and the fact that complainant is actively contesting defendant's attempt to be elected to the Court of Appeal by informing any and all citizens of the judicial district in which he is running of his unfitness for office and, further, because complainant believes that defendant is a vindictive and dishonest person who will attempt to seek retribution against complainant by ruling against complainant's clients in cases before him, complainant may feel compelled in many cases to file motions for recusation alleging in substance the facts set out in the motion for recusation found hereinabove in paragraph 7. [Art. 11c.]

\*　　\*　　\*　　\*　　\*　　\*

"When complainant appeared before the Court in response to the rule to show cause, the members of the Supreme Court had stationed three police officers immediately around the podium from which an attorney argues his case, thereby attempting to intimidate him and showing their predetermination of complainant's 'guilt' of the charge against him. Complainant was also harassed and intimidated in the conduct of his defense by Chief Justice John B. Fournet's statement to him in open court that the court had in the past, and would not hesitate in the future, to immediately and summarily hold an attorney in contempt and have him incarcerated if he were to repeat statements such as those complainant had made in his application for rehearing. Complainant was thereby prevented from proving, or even arguing, the truth of the statements made by him. [Art. 57.]

"During the course of the contempt hearing [before the Supreme Court of Louisiana], complainant was asked in open court by Justice Hamlin if he 'honestly considered the members of the Court to be dishonest;' complainant replied truthfully: 'Yes, sir, I do.' At this point, Court was adjourned for several minutes and when the Justices returned, complainant was adjudged guilty of contempt, thus indicating that complainant was being punished, not for statements made by him, but rather for his beliefs." [Art. 58, "Amended Complaint."]

To this purported Amended Complaint Judge Dixon filed a motion to strike and to dismiss. The motion to strike was filed under Rules 11 and 12 of the Federal Rules of Civil Procedure; the grounds of the motion, among others, being that the pleading was filed with intent to defeat the purpose of Rule 11 and that the pleading is replete with scandalous matter in violation of Rule 11 and with redundant, immaterial, impertinent, and scandalous material in violation of Rule 12(f). The motion to dismiss asserts that the attempted amendment to the complaint purported to add additional parties but did not seek nor obtain leave of court for the addition of these parties; that it failed to state a claim upon which relief could be granted; that it added no issues not previously covered by the motion for summary judg-

ment and that it was an improper cumulation of parties and actions.

The additional named defendants, A. Leon Hebert, Walter G. Arnette, Pat W. Browne, Sr., A. K. Goff, Jr., James H. Drury, and Thomas O. Collins, Jr., then filed a motion to disallow and dismiss the Amended Complaint on several grounds, including lack of appropriate venue. They assert that they are members of the Ethics and Grievances Committee of the Louisiana State Bar Association, by appointment of the Supreme Court; that they are being sued in their official capacity; that the Louisiana State Bar Association is domiciled in the Eastern District of Louisiana; and that they, as members of a committee of that Association, appointed by the Court are likewise officially domiciled in that District.

The members of the three-judge court convened by the Honorable Chief Judge of the Fifth Circuit Court of Appeals, after considering the direction of Judge Brown, that it "determine whether it is a 3-judge matter," have determined unanimously that no substantial constitutional question is presented; and that the case was not appropriate for decision by a 3-judge court under 28 U.S.C. § 2281. Accordingly, the 3-judge court, by joint and unanimous action of the members thereof, was dissolved, and the matter returned to this single judge for writing appropriate disposition.[1]

Hearing was held August 16, 1968. At issue was the new trial and/or rehearing previously ordered on motion of plaintiff as to Judge Dixon's motion for summary judgment and the motions to strike and dismiss the proposed Amended Complaint.

■ We consider first the initial sole defendant's (Judge Dixon's) motion to strike the Amended Complaint. It is fair to comment that this pleading indeed is permeated with scandalous material reprobated by Rule 11 and with redundant,

immaterial, impertinent matter forbidden to be contained in a pleading under Rule 12(f) of the Federal Rules of Civil Procedure. Complainant obviously has taken this opportunity to vent his spleen not only against Judge Dixon, but also against the entire Louisiana Supreme Court and implicitly or explicitly, many others. These allegations add nothing to any supposed constitutional rights complainant may have in this proceeding. He alleges that Judge Dixon actively is engaged in a campaign for election to the Second Circuit Court of Appeal of the State of Louisiana and that complainant is actively opposing his election. The attempted Amended Complaint, which was not allowed, and as to which no prayer for such was contained, largely directed against Judge Dixon, appears on its face to constitute an obviously bald attempt by complainant to utilize this court as a forum for purely political ends. Consequently, it is the opinion of this court that, for these reasons, this Amended Complaint should be stricken, and it is so ordered.

■ Even were the so-called Amended Complaint not stricken, it is further our opinion that it should be dismissed. Rule 21 of the Federal Rules of Civil Procedure requires that additional parties may be added or dropped from an action only on motion of any party *and* order of the court. Such Amended Complaint contains no request for any order to add additional parties, and no such order has been granted. Therefore, notwithstanding the general philosophy of the Federal Rules of Civil Procedure, as to amendments to pleadings (Rule 15), it is ineffective insofar as it attempts to add additional parties. Rule 20, F.R.Civ.Proc., concerning permissive joinder of parties, allows multiple parties defendant " * * * if there is asserted against them * * * any right to relief in respect of or arising out of the same

---

1. See Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512; Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194; Moss v. Hornig, 314 F.2d 89 (2 Cir. 1963); Green v. Board of Elections of City of New York, 380 F.2d 445 (2 Cir. 1967). Also see Annotations at 15 L.Ed.2d 923 and 4 L.Ed.2d 1955.

transaction, occurrence or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action." As to the relief sought against the members of the Ethics and Grievances Committee of the Louisiana State Bar Association, the allegations of the attempted Amended Complaint clearly show that the incidents giving rise to the disciplinary proceedings complained of therein arose several years ago and have no connection whatever with complainant's immediate alleged grievances against Judge Dixon, in this proceeding. It is plain that no relief is sought by complainant against these additional defendants "arising out of the same transaction, occurrence, or series of transactions or occurrences." This requirement of Rule 20 is not met, and the joinder of these defendants is wholly improper.[2]

■ We next consider the motion to dismiss filed by A. Leon Hebert, Walter G. Arnette, Pat W. Browne, Sr., A. K. Goff, Jr., James H. Drury and Thomas O. Collins, Jr., official members of the State's Ethics and Grievances Committee. It is obvious from the pleadings that these defendants are sued in their capacity as members of the Ethics and Grievances Committee of the Louisiana State Bar Association, designated as such, and appointed, by the Louisiana Supreme Court. On oral argument, it was admitted by counsel for complainant, (and such is so established by the Louisiana statute), that the Louisiana State Bar Association is domiciled in Orleans Parish. The domicile of this Committee, therefore, would be in Orleans Parish in the Eastern District of Louisiana. This court, therefore, lacks competent venue over these defendants, and their motion to dismiss is sustained.

Concerning the complainant's request for an injunction against enforcement or action upon the most recent contempt citation against him, he asserts the claimed unconstitutionality of Articles 221, et seq., of the Louisiana Code of Civil Procedure, both on their face, and as applied to him. Article 222 of the Louisiana Code of Civil Procedure defines *direct* contempt as including both of the following:

"(1) Contumacious, insolent, or disorderly behavior toward a judge, or an attorney or other officer of the court, tending to interrupt or interfere with the business of the court, or to impair its dignity or respect for its authority;

\*   \*   \*   \*   \*   \*

"(3) Use of insulting, abusive, or discourteous language by an attorney or other person in open court, or in a pleading, brief, or other document filed with the court in irrelevant criticism of another attorney or of a judge or officer of the court; \* \* \*."

Complainant asserts that this definition has been interpreted by the Louisiana Supreme Court in Spencer v. Dixon, supra, to the effect that truth can be no defense by him in any criticism of a judge or justice.[3] He also asserts that the Article is overly broad in its suppression of freedom of speech and unconstitutionally vague. His constitutional attack is founded on New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686; Garrison v. State of Louisiana, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed. 2d 125; Holt v. Commonwealth of Virginia, 381 U.S. 131, 85 S.Ct. 1375, 14 L. Ed.2d 290; and Bloom v. State of Illinois,

---

**2.** Barron and Holtzoff, Federal Practice and Procedure, Rules Edition, Section 533.

**3.** As hereinafter again noted, in that case this same complainant had charged in an application for rehearing before the Supreme Court of Louisiana that the Supreme Court had ignored statutory law in denying his application for writs, and that the Court was dishonest in so doing in

fraud of his rights. A contempt citation was issued by that Court for use of this language. In justification of these charges, he pled the truth of the charges. To this the Supreme Court stated: " \* \* \* but justification does not constitute a defense to a contempt of court *such as we have here.*" (Emphasis supplied.) That Court did not intimate that truth is not a defense to *any* criticism of a judge.

391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522.

■ All American and Anglo-Saxon courts of justice are vested by their creation with full power to impose silence, respect, and decorum in their presence by direct contempt authority. This authority is inherent and its existence essential to the preservation of law and order in judicial proceedings. The Louisiana statutory provisions under attack are similar to but slightly more restrictive than the contempt characterized in the United States Code as "criminal contempt." Cf. 18 U.S.C. § 401(2). This latter type of contempt is punishable under the procedures of Rule 42(a) of the Federal Rules of Civil Procedure.

Complainant puts at issue the right of the Louisiana Legislature [4] to authorize its courts fairly to control pleadings and require that judicial proceedings be conducted by its Bar in an orderly, dignified, and unrecriminating manner. The history and development of contempt proceedings in our courts do not suggest a restrictive interpretation of contempt powers to the illogical extent urged by complainant. Indeed, if such were the case, all courts would be powerless to enforce orderly sanctions for such misconduct by members of the Bar who might be brazen or foolish enough to "spill their guts," on the least provocation, against the judiciary, which, as noted, is entitled to at least decent respect from the lawyers who practice in our courts.

In Ex parte Terry, 128 U.S. 289, 9 S.Ct. 77, at page 80, 32 L.Ed. 405 at page 410 (1888), the United States Supreme Court declared:

"* * * But there is another rule, of almost immemorial antiquity, and universally acknowledged, which is equally vital to personal liberty and to the preservation of organized society, because upon its recognition and enforcement depend the existence and authority of the tribunals established to protect the rights of the citizen, whether of life, liberty, or property, and whether assailed by the illegal acts of the government or by the lawlessness or violence of individuals. It has relation to the class of contempts which, being committed in the face of a court, imply a purpose to destroy or impair its authority, to obstruct the transaction of its business, or to insult or intimidate those charged with the duty of administering the law. Blackstone thus states the rule: 'If the contempt be committed in the face of the court, the offender may be instantly apprehended and imprisoned, at the discretion of the judges, without any further proof or examination. * * *'"

■ Since Ex parte Terry, the law of contempt has been refined by numerous decisions, and in some instances, arbitrary judicial authority curtailed.[5] This court has been referred to no case of any appellate tribunal or court of original jurisdiction which ever has interdicted as unconstitutional the contempt authority of a court to punish irrelevant, insulting, abusive, or grossly discourteous language in criticism of a judge or officer of the court in a pleading filed with the court. It is our irrevocable view that such language contains no constitutional protection and so has been held by definitive opinions of appellate tribunals, especially by the Supreme Court of the United States.[6] In the case of In re Sawyer, 360 U.S. 622, 79 S.Ct. 1376, 3

---

4. Because of the similarity of contempt power in most jurisdictions, his argument, if accepted, would be equally destructive to the contempt powers of the Federal Courts and most State Courts.

5. Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911); Cooke v. United States, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767

(1925); In re Oliver, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948); Offutt v. United States, 348 U.S. 11, 75 S.Ct. 11, 99 L.Ed. 11 (1954); and Bloom v. State of Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522.

6. Fisher v. Pace, 336 U.S. 155, 69 S.Ct. 425, 93 L.Ed. 569; In re Sawyer, 360 U.S. 622, 79 S.Ct. 1376, 3 L.Ed.2d 1473.

L.Ed.2d 1473, Mr. Justice Stewart in his concurring opinion stated:

> "* * * A lawyer belongs to a profession with inherited standards of propriety and honor, which experience has shown necessary in a calling dedicated to the accomplishment of justice. He who would follow that calling must conform to those standards.
>
> "Obedience to ethical precepts may require abstention from what in other circumstances might be constitutionally protected speech. * * *"

Justice Stewart's words were written in response to an appeal concerning disciplinary proceedings brought against an attorney. It is the opinion of this court that this language is an entirely accurate statement of the law as relates to contempt authority over attorneys relative to the content of pleadings deliberately filed by attorneys.

New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, and Garrison v. State of Louisiana, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125, afford complainant no help for the proposition advanced by him. *Garrison* was a logical extension of the *New York Times* rule, affording critics of public figures accused of *violating criminal laws of defamation* the same protections guaranteed in civil libel and slander actions. Rather than criminal defamation proceedings, this case involves summary contempt proceedings for the alleged commission of direct contempt.[7] This court sees not the slightest suggestion in *Garrison* that the free speech protection was intended to give unbridled license to an

attorney to commit conduct which fits Louisiana's definition of direct contempt. No court has suggested that judges are without authority to control scurrilous and defamatory pleading content, as respects duly constituted members of the judiciary, State or Federal.

Complainant's reliance on Holt v. Commonwealth of Virginia, 381 U.S. 131, 85 S.Ct. 1375, 14 L.Ed.2d 290, is equally inappropriate. At issue in *Holt* was more than the conduct of litigants or the content of pleadings. It appears that Virginia had no statute comparable to the applicable Louisiana provisions for recusation of judges or change of venue. In *Holt* an attorney filed a motion for a change of venue based on the alleged bias of the trial judge. He was punished for contempt for the filing of the motion. On review the United States Supreme Court found the words of the pleading "no way offensive in themselves, and wholly appropriate to charge bias in the community and bias of the presiding judge." By contrast, the Louisiana statute declares contumacious only such criticism of a judge as is "irrelevant." *Holt* did not hold and does not even suggest that conduct interdicted by the Louisiana Contempt Statute enjoys a constitutional free speech protection or any other constitutional protection. *Holt* merely reiterates the constitutional guarantee that a defendant is absolutely entitled to an opportunity to be heard in a fair tribunal and the corollary right to file motions and pleadings essential to insure that right. These rights are specifically guaranteed by appropriate Louisiana statutory proceedings.[8]

---

7. Included in the acts constituting direct contempt of court enumerated in Article 222 of the Louisiana Code of Civil Procedure is the use of "insulting, abusive, or discourteous language by an attorney * * * in a pleading * * * filed with the court in irrelevant criticism of * * * a judge * * *."

8. Louisiana Code of Civil Procedure, Articles 122 and 151 through 161:
    "Art. 122. Change of proper venue
    "Any party by contradictory motion may obtain a change of venue upon proof

that he cannot obtain a fair and impartial trial because of the undue influence of an adverse party, prejudice existing in the public mind, or some other sufficient cause. If the motion is granted, the action shall be transferred to a parish wherein no party is domiciled."
    "Art. 151. Grounds

    "A judge of any court, trial or appellate, may be recused when he:
    "(1) Is a material witness in the cause;
    "(2) Has been employed or consulted as an attorney in the cause, or has been as-

Complainant has asserted that under Louisiana law, he is not entitled to trial by jury for this alleged contempt, which he claims is guaranteed by Bloom v. State

sociated with an attorney during the latter's employment in the cause;

"(3) Has performed a judicial act in the cause in another court;

"(4) Is the spouse of a party, or of an attorney employed in the cause; or is related to a party, or to the spouse of a party, within the fourth degree; or is related to an attorney employed in the cause, or to the spouse of the attorney, within the second degree; or

"(5) Is interested in the cause.

"In any cause in which the state, or a political subdivision thereof, or a religious body or corporation is interested, the fact that the judge is a citizen of the state or a resident of the political subdivision, or pays taxes thereto, or is a member of the religious body or corporation, is not a ground for recusation."

"Art. 152. Recusation on court's own motion or by supreme court

"A judge may recuse himself, whether a motion for his recusation has been filed by a party or not, in any cause in which a ground for recusation exists.

"On the written application of a district judge, the supreme court may recuse him for any reason which it considers sufficient."

"Art. 153. Judge may act until rescused or motion for recusation filed

"Until a judge has recused himself, or a motion for his recusation has been filed, he has full power and authority to act in the cause."

"Art. 154. Procedure for recusation

"A party desiring to recuse a judge of a district court shall file a written motion therefor assigning the ground for recusation. This motion shall be filed prior to trial or hearing unless the party discovers the facts constituting the ground for recusation thereafter, in which event it shall be filed immediately after these facts are discovered, but prior to judgment. If a valid ground for recusation is set forth in the motion, the judge shall either recuse himself, or refer the motion to another judge or a judge ad hoc, as provided in Articles 155 and 156, for a hearing."

"Art. 155. Selection of judge to try motion to recuse; court having two or more judges

"In a district court having two or more judges, the judge who is sought to be recused shall have the motion to recuse referred to another judge of the court for trial, in accordance within the rules of the court."

"Art. 156. Same; court having single judge

"The judge of a district court having a single judge shall appoint a district judge of an adjoining district to try the motion to recuse.

"The order of court appointing the judge ad hoc shall be entered on its minutes, and a certified copy of the order shall be sent to the judge ad hoc."

"Art. 157. Judge ad hoc appointed to try cause when judge recused; power of judge ad hoc

"After a trial judge recuses himself he shall appoint a judge ad hoc to try the cause in the manner provided by Articles 155 and 156 for the appointment of a judge ad hoc to try the motions to recuse. When a trial judge is recused after a trial of the motion therefor, the judge ad hoc appointed to try the motion to recuse shall continue to act as judge ad hoc for the trial of the cause.

"The judge ad hoc has the same power and authority to dispose of the cause as the recused judge has in cases in which no ground for recusation exists."

"Art. 150. Supreme court appointment of district judge to try cause when judge recused

"In a cause in which the district judge is recused, even when a judge ad hoc has been appointed for the trial of the cause under Article 157, a party may apply to the supreme court for the appointment of another district judge as judge ad hoc to try the cause. If the supreme court deems it in the interest of justice, such appointment shall be made.

"The order of the supreme court appointing a judge ad hoc shall be entered on its minutes. The clerk of the supreme court shall forward two certified copies of the order, one to the judge ad hoc appointed and the other to the clerk of the district court where the cause is pending, for entry in its minutes."

"Art. 159. Recusation of supreme court justice

"When a written motion is filed to recuse a justice of the supreme court, he may recuse himself or the motion shall be heard by the other justices of the court.

"When a justice of the supreme court recuses himself, or is recused, the court may (1) have the cause argued before and disposed of by the other justices, or (2) appoint a judge of a district

of Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522. Louisiana's law on punishment of contempt, in pertinent part, provides:

"Art. 223.  Same; procedure for punishing

"A person who has committed a *direct* contempt of court may be found guilty and punished therefor by the court forthwith, without any trial other than *affording him an opportunity to be heard orally by way of defense or mitigation.*  The court shall render an order reciting the facts constituting the contempt, adjudging the person guilty thereof, and specifying the punishment imposed." (Emphasis added.)

"R.S. 13:4611.  Punishment for contempt of court.

"Except as otherwise provided by law:

"(A) The supreme court, the courts of appeal, the district courts, family courts, juvenile courts and the city courts may punish a person adjudged guilty of a contempt of court therein, as follows:

"(1) *For a direct contempt of court committed by an attorney at law,* by a fine of not more than one hundred dollars, or by imprisonment for not more than twenty-four hours, or both; and, *for any subsequent contempt of the same court by the same offender,* by a fine of not more than two hundred dollars, or by imprisonment for not more than ten days, or both; * * *." (Emphasis added.)

court or a court of appeal having the qualifications of a justice of the supreme court to act for the recused justice in the hearing and disposition of the cause."
"Art. 160.  Recusation of judge of court of appeal
"When a written motion is filed to recuse a judge of a court of appeal, he may recuse himself or the motion shall be heard by the other judges on the panel to which the cause is assigned, or by all judges of the court, except the judge sought to be recused, sitting en banc.
"When a judge of a court of appeal recuses himself, or is recused, the court

The Supreme Court in *Bloom* considered the right of jury trial in *serious* contempt cases.  The contempt at issue there had resulted in a sentence of two years' imprisonment.  In overuling several prior decisions, the Court there held that:

" * * * *When a serious contempt is at issue,* considerations of efficiency must give way to the more fundamental interest of ensuring the even-handed exercise of judicial power." (Emphasis supplied.)

The Court was careful to limit the effect of its decision to "serious contempt." It dealt with an indirect contempt, not direct.  The Court discussed the issue of direct contempt, particularly in the context of Rule 42(a) of the Federal Rules of Criminal Procedure, and stated:

" * * * There is, therefore, a strong temptation to make exception to the rule we establish today for disorders in the courtroom.  We are convinced, however, that no such special rule is needed.  It is old law that guarantees of jury trial found in Article III and the Sixth Amendment do not apply to petty offenses.  Only today we have reaffirmed that position. * * By deciding to treat criminal contempt like other crimes insofar as the right to jury trial is concerned, we similarly place it under the rule that *petty crimes need not be tried to a jury.*" (Emphasis added.)

█    It should be strongly noted here that Louisiana Revised Statutes 13:4611

may (1) have the cause argued before and disposed of by the other judges of the panel to which it is assigned, or (2) appoint another of its judges, a judge of a district court or a lawyer having the qualifications of a judge of a court of appeal to act for the recused judge in the hearing and disposition of the cause."
"Art. 161.  Recusation of judge ad hoc
"A judge ad hoc appointed to try a motion to recuse a judge, or appointed to try the cause, may be recused on the grounds and in the manner provided in this Chapter for the recusation of judges."

fixes the penalty for direct contempt of an attorney on first offense at $100 or imprisonment for not more than twenty-four hours, or both, and on any subsequent offense before the *same* court at $200 or imprisonment for not more than ten days, or both. By virtue of the Supreme Court's definition of "serious offense," as contained in Bloom v. State of Illinois, the alleged direct contempt for which complainant is cited, is clearly a "petty crime," involving less than six months' imprisonment, which need not be tried to a jury.

■ Complainant also relies on Wood v. Georgia, 370 U.S. 375, 82 S.Ct. 1364, 8 L.Ed.2d 569. He claims that the constitutional protection of free speech supports any language used before a court unless that language presents a "clear and present danger" to the administration of justice. Complainant ignores the inescapable fact that Wood v. Georgia dealt solely with an "utterance out of the presence of the court." Neither the opinion of the Supreme Court in Wood v. Georgia nor any other opinion to which we have been referred, or which our research discloses, has suggested that the "clear and present danger" test has any application to contempt proceedings resulting from the content of pleadings directly filed by an attorney in the public records of a duly constituted court. The historical development of "direct" contempt compels the opposite conclusion.

The law of contempt as it relates to control of pleading content, filed directly in a competent court, is accurately stated at page 32, Section 12, 17 Am.Jur.2d:

"There is authority holding that it is contempt for an attorney to file a document containing scandalous, defamatory, and offensive personal charges that are not to be construed as statements of fact, or containing impertinent accusations and innuendoes relating to or involving judicial acts, or impugning the integrity of the judge, or reflecting on his character, or amounting to disrespect for judicial dignity or implication of dishonesty or corruption in office. That the affiant believes the charges is not excuse or justification in law and does not prevent the filing of the document from constituting contempt. In fact, where the only purpose of including scandalous, defamatory, and irrelevant matter in a complaint [or other proceeding] is to embarrass, intimidate, and coerce, the truth or falsity of the charges is immaterial.

"The filing of papers which are gross and indelicate in language, the use of scandalous language in a brief, or the making of statements therein charging the court with improper motives in rendering a certain line of decisions may constute contempt of court.

"By procuring the filing of an affidavit by a third person containing contemptuous statements, an attorney becomes equally guilty with the affiant."

■ It is our clear and firm opinion that the entirely unmistakable and definitive, as well as appropriate, contempt articles adopted by the Legislature of Louisiana are not unconstitutional on their face, nor do we have reason to believe the articles will be unconstitutionally applied to complainant in the summary hearing to be held below. This is particularly true in that a District Judge, outside of Caddo Parish, whom we have known personally since our Law School days together, has been designated to hear and decide the case, and whom we personally know to be scrupulously fair and unbiased, in all of his legal and judicial actions, certainly will not act out of order, whatever his ultimate judgment may be upon the merits and applicable law, as here involved.

As these provisions are not an overly-broad limitation of speech, and do not involve "serious" contempt, it inexorably follows that the first element required by Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22, relied on by complainant for issuance of an injunction, is entirely inapplicable. It follows that we find it unnecessary to reach a

decision as to whether other elements delineated by *Dombrowski* are present.

Of course, as we have noted for the record, in the hearing held before us, we do not intimate any opinion whatever as to the merit, or lack of merit, of the contempt charge pending before the State Court. That is for Judge Williams, and the appellate courts of Louisiana, to decide. We are certain, from this, that a fair and impartial judgment will be rendered.

█ Complainant's damage claim is set forth in one article of his original complaint which reads:

"Complainant itemizes his damages as follows:

"Violation of constitutional rights—$100,000."

Defendant, Judge Dixon, has asserted by appropriate motion his immunity from such a claim, and it is the opinion of this court that his immunity clearly exists as to this claim,[9] even were it found that he acted maliciously, which point is not before us.

It therefore is our opinion that our prior judgment granting to the defendant, Judge Dixon, his motion for summary judgment was proper. That judgment is reinstated and complainant's suit is dismissed at his cost.

A proper decree should be presented.

## ADDENDUM

Since the above opinion was written, and before its final issuance, Judge Dixon, on September 28th, 1968, by vote of the members of the Democratic party, has been elected as the Democratic nominee for the position of Judge of the Court of Appeal for the Second Circuit of Louisiana, without Republican opposition in the November general election.

9. Pierson, et al v. J. L. Ray, et al, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288; Steinpreis v. Shook, 377 F.2d 282; Carmack v. Gibson, 5 Cir., 363 F.2d 862; Bauers v. Heisel, 3 Cir., 361 F.2d 581.