In the Matter of the Citation of Attorney
C. A. FRERICHS.

No. 36.

Supreme Court of Iowa.

Feb. 18, 1976.

Frederick G. White, Waterloo, for respondent, C. A. Frerichs.

HARRIS, Justice.

This is an original disciplinary proceeding in which C. A. Frerichs, the respondent attorney, was cited to show cause why disciplinary action should not be taken against him for conduct directed to the court.

The citation was immediately precipitated by respondent's written assertion this court had practiced what amounted to deceit in processing a criminal appeal. Respondent was attorney for Michael P. Wetlaufer, defendant in *State v. Wetlaufer*, 236 N.W.2d 57 (Iowa 1975). In an unpublished per curiam opinion we affirmed Wetlaufer's conviction of possession of a controlled substance in violation of § 204.401, The Code. Following the filing of our opinion respondent prepared and filed a petition for rehearing.

Respondent expressed his belief the court had refused to address a constitutional question he urged was necessary to fully consider the appeal. He charged the court with "willfully avoiding" constitutional questions raised by him in three consecutive cases, thus violating the constitutional rights of his clients. While denying any such assertion we of course recognize the right and duty of any attorney holding such a view to assert it—within the broad but carefully prescribed boundaries of professional ethics. Respondent was not cited for criticism of our opinions. The citation was issued because respondent ascribed improper motives to the court in not reaching all constitutional questions respondent sought to raise. Respondent was cited for accusing the court of what amounted to fraud and deceit in its review of the factual record.

The petition for rehearing stated:

"Thus, this is a classic case where the trial court and the appeals court refuse to address themselves to the merits of a defendant's substantial constitutional claims by the simple expedient of refusing to recognize or discuss the facts in the case or to specifically rule on the specific substantive issues raised under those facts.

"* * *

"Petitioner's Petition for Rehearing specifically charges the Iowa Supreme Court with willfully avoiding the substantial constitutional issues raised by defendant's appeal and of violating his rights to 'due process' and 'equal protection of the laws.'

"This allegation is not made in haste or without appropriate consideration by defendant's counsel. This is the third criminal appeal in a row pursued by defendant's counsel where the Iowa Supreme Court 'ducked' the constitutional questions raised in the appeals."

The three appeals respondent referred to were not cases involving statutory construction, which we would approach with the announced resolve to avoid a holding of unconstitutionality if reasonably possible. *State v. Aldrich*, 231 N.W.2d 890, 894 (Iowa 1975); *State v. Lavin*, 204 N.W.2d 844, 849 (Iowa 1973). Rather, in all three we had simply held the circumstances complained about did not rise to the level of deprivation of constitutional rights.

As noted, in the petition for rehearing in *Wetlaufer*, respondent referred to earlier appeals. Our citation likewise included similar assertions in previous petitions for rehearing filed by respondent.

In the petition following the filing of our opinion in *State v. Johnson*, 219 N.W.2d 690 (Iowa 1974) respondent stated "The court's

ruling not only rewrites the record, it rewrites the assigned errors submitted to it for determination and accordingly is a violation of due process under the federal and state constitutions." The petition stated elsewhere: " * * * This court has now followed plaintiff's lead and has ignored the claimed error by its refusal to rule." The same petition for rehearing contained the following statement: "This court in its ruling has pointedly refused to rule on defendants assigned errors but has chosen instead to set up its own straw men and rule on those instead."

In a petition for rehearing following the filing of our opinion in *State v. Cage,* 218 N.W.2d 582 (Iowa 1974), after charging we refused to rule on the merits of defendant's contentions, respondent asserted "[failure of this court to review Division I] rewrites the common sense proposition set forth in *State v. Evans* and makes a game out of the pursuit of justice and victimizes the criminal accused for the protection of trial courts. * * *."

Following our opinion in *Miller v. Miller,* 202 N.W.2d 105 (Iowa 1972), after charging our findings were without a basis in fact, respondent asserted " * * * [t]he lasting impression furnished by this court in its opinion is that plaintiff was 'had' on the custody question by a prejudiced trial court and mere delay in prosecuting the appeal. * * *." The same petition stated:

"The court's baseless conclusions will undoubtedly be used in future litigation by plaintiff where defendant will not have ready access to the proof he offered at trial. This court in its haste to chastise the trial court for improprieties has rewritten the record to the detriment of defendant and the parties' minor children and has done so in a manner which will undoubtedly foster future litigation."

The same petition contains the following assertion:

"Defendant submits that in this court's haste to censure the trial court, it has first rewritten the record and then finan-cially punished defendant and his children for the trial court's indiscretions. * * *. It ignores the trial record and flies in the face [of other facts]."

■ I. Our system of justice rests upon the mutual regard of the bench and bar. Each branch of the profession traditionally accords the other the courteous behavior and ordinary civility which stems, not from any need or inclination of submissiveness of one branch for the other, but from the high demands and lofty purpose of the system itself.

We have been quick to demand civility in the demeanor of judges toward attorneys, as exacted by the American Bar Association's Canons of Judicial Ethics, adopted by our court rule 119. *Forsyth v. Forsyth,* 210 N.W.2d 430, 432 (Iowa 1973). Cf. *State v. Glanton,* 231 N.W.2d 31, 35 (Iowa 1975). There is a dearth of opinions on the subject because violations of the canons seem extremely rare.

We have noted even fewer occurrences involving demeaning conduct by lawyers directed toward courts. The oath of office which respondent took upon his admission to the bar incorporated verbatim the following provisions of Iowa Code § 610.14, duties of attorneys and counselors:

"1. To maintain the respect due to courts of justice and judicial officers.

" * * *

"5. To abstain from all offensive personalities * * *."

Disciplinary Rule (DR) 8–102B of our Iowa Code of Professional Responsibility for Lawyers provides: "A lawyer shall not knowingly make false accusations against a judge or other adjudicatory officer."

The Ethical Considerations of our Iowa Code of Professional Responsibility for Lawyers (hereinafter ICPRL) describe our common experience and prescribe the objectives for professional conduct. They constitute a body of principles upon which the lawyer can rely for guidance in many situations, including the one before us.

Ethical Consideration (hereinafter EC) 8–6 states in part:

"* * * Adjudicatory officials, not being wholly free to defend themselves, are entitled to receive the support of the bar against unjust criticism. While a lawyer as a citizen has a right to criticize such officials publicly, he should be certain of the merit of his complaint, use appropriate language, and avoid petty criticisms, for unrestrained and intemperate statements tend to lessen public confidence in our legal system. Criticisms motivated by reasons other than a desire to improve the legal system are not justified."

ICPRL, EC 7–36 provides in part:

"Judicial hearings ought to be conducted through dignified and orderly procedures designed to protect the rights of all parties. Although a lawyer has the duty to represent his client zealously, he should not engage in any conduct that offends the dignity and decorum of proceedings. While maintaining his independence, a lawyer should be respectful, courteous, and aboveboard in his relations with a judge or hearing officer before whom he appears. * * * ."

See also EC 9–6; § 610.14(1), The Code; 7 C.J.S. Attorney and Client § 23d(2), pp. 752–753; and 7 Am.Jur.2d, Attorneys at Law, § 29, p. 61.

The ICPRL alludes to a lack of freedom on the part of judges to defend themselves. There is the danger any judicial defense against unprofessional assertions may be thought to arise from an improper sensitivity to criticism. Yet we recognize the plain function and purpose of a petition for rehearing is to criticize. We are quite accustomed to the strongest sort of criticism and applaud the efforts of counsel to lodge criticism forcefully.

In answering the citation respondent argues he was fulfilling his professional duty to be critical. Of course he has such a duty but the argument is in no way responsive to the matters raised in the citation. The citation is directed, not to the fact of respondent's criticism, but to the nature and manner of his reckless charges.

■ Respondent's assertions easily could be said to allege commission of public offenses. Setting aside the concept of judicial immunity we note that, under § 740.3, The Code, it would be an indictable misdemeanor for any judge to willfully and maliciously oppress any person under pretense of judicial capacity. Under 18 U.S.C. § 241, it would be a felony for judges to conspire to injure, oppress, threaten, or intimidate any citizen in the exercise of a constitutional right. We find respondent's assertions unprofessional because they attribute to this court sinister, deceitful and unlawful motives and purposes.

■ Respondent now urges his intent was not to allege the commission of any illegal actions on the part of the court. We do not believe respondent can avoid the impact of his assertions on the basis of his subjective intent. The ICPRL was not promulgated for the private intentions or feelings of judges or lawyers but to protect the integrity of, and public confidence in, our system of justice. Respondent's assertions should be judged with a view to their likely effect on the public's belief in the integrity of the court as an institution. The effect of the respondent's remarks on the public's belief is in no way related to his subjective intent.

Neither does respondent's subjective intent relate to the question of whether his remarks were knowingly made. Respondent, as we have seen, expressly acknowledged his charges were "not made in haste or without appropriate consideration."

Respondent separately argues his assertions against the court in the *Wetlaufer* petition for rehearing were required as a condition precedent for asserting a claim in federal court, citing *Oyler v. Boles,* 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962). *Oyler* refers to the law applicable in a very narrow set of circumstances and furnishes

no support for respondent's claims in the *Wetlaufer* situation. See 16 Am.Jur.2d, Constitutional Law, §§ 540–541, pp. 929–930. Neither the federal habeas corpus statute nor the federal cases construing it articulate any general requirement that petitioner's attorney allege a willful violation of his client's rights by the State court system. See 28 U.S.C. § 2254; *Burks v. Egeler,* 512 F.2d 221, 226 (6 Cir. 1975); *Corlew v. Swenson,* 336 F.Supp. 592, 593 (E.D.Mo.1971). We cannot and will not abdicate our responsibility to enforce the canons of legal ethics upon any such claim.

■ II. The foregoing is dispositive of other contentions urged by respondent. He raises a claim under Amendment 1, United States Constitution. But his or his client's freedom of expression is not here involved. We have acknowledged his right and duty to criticize in the manner allowed by the canons of professional ethics. The conduct here involved is generally held not protected by freedom of speech guarantees under the first amendment. See Annot., 27 L.Ed.2d 953, 963–968 and Annot., 12 A.L. R.3d 1408, 1412–1414.

Respondent's reliance in this connection on *Bridges v. California,* 314 U.S. 252, 62 S.Ct. 190, 86 L.Ed. 192 (1941) is misplaced because the case is not in point. *Bridges* upheld the right of the press to criticize a state court on a matter in pending litigation. A provision for contempt against the publishers of the criticism was struck down where there had been no showing of a clear and present danger of interference with the orderly administration of justice.

■ We reject any suggestion the above cited statute and disciplinary rules are impermissibly vague and therefore unconstitutional. The canons would offend the due process clause only if a person of ordinary intelligence did not have a reasonable opportunity to know what was prohibited. We have said constitutional muster is passed where the meaning of the words can be fairly ascertained by referring to similar statutes, prior judicial determinations, the common law, the dictionary, or the words themselves where they have a common and generally accepted meaning. *Aldrich,* supra, 231 N.W.2d at 894, and authorities. As we have already noted, the Ethical Considerations provide further guidance. Under this test we find the statute and disciplinary rules are not vague. It is apparent they are clearly understood and meticulously followed by the profession. Respondent's claim of vagueness is wholly without merit.

■ Respondent contends the due process clause of Amendment 14, United States Constitution requires that any cited lawyer be given a public hearing before an adjudicatory body "who would clearly not be under any persuasion or pressure from the Iowa Supreme Court by reason of their status being under the supervisory control of the Iowa Supreme Court."

We reject the contention.

"We claim the inherent constitutional power to license lawyers and acknowledge the duty to censure, suspend or revoke licenses to practice when a lawyer has committed an offense which involves deceit, is prejudicial to the administration of justice, and adversely reflects on such a person's fitness as a member of the bar. (Authority)." *Com. on Professional Ethics, etc. v. Toomey,* 236 N.W.2d 39, 40 (Iowa 1975). See also *Ungar v. Sarafite,* 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964); *In re Minnis,* 56 S.Ct. 176, 80 L.Ed. 1411 (1935) and 56 S.Ct. 504, 80 L.Ed. 1414 (1936); *In re Lord,* 255 Minn. 370, 97 N.W.2d 287 (1959).

III. Respondent seems to suggest the Ethical Considerations are not in all events binding on a lawyer but are merely aspirational. He asserts, if an ethical consideration comes into conflict with a constitutionally protected right, the consideration must give way to the right. This argument betrays a misunderstanding of the purpose of the Ethical Considerations we have above outlined.

Strongly conflicting forces are often brought to bear on one pursuing the high

calling of an attorney. In his professional role a lawyer has a duty to the court which he serves as officer. He has a duty to his client. He has a duty to his own upright conscience. He has a necessary duty to the legitimate pursuit of his own professional career. The conflicts between these forces have long troubled even those most dedicated to the profession. Involvement in the various conflicts and possible conflicts in former times often led to agonizing confusion for an attorney caught in the uncertainty as to which duty should be predominant.

The Code of Professional Responsibility for Lawyers was developed, not by judges, but by lawyers so as to mark the proper path for any attorney who senses a conflict between various duties. Thirty-two Canons of Professional Ethics were adopted by the American Bar Association in 1908. They were based principally on the Code of Ethics adopted by the Alabama State Bar Association in 1887. The development and nationwide promulgation of the canons were largely the works of the practicing bar. For many decades the American Bar Association undertook an extensive revision of the canons. This effort resulted in the promulgation, July 1, 1969, of the final draft of the Code of Professional Responsibility. Preface, Code of Professional Responsibility, ABA Final Draft.

The Iowa Code of Professional Responsibility for Lawyers, binding by our order on all lawyers practicing before this court, is derived from the ABA Code of Professional Responsibility.

■ All lawyers practicing before this court are bound by the canons and the provisions of the Iowa Code above set out. They are not free to view them merely as aspirational. A canon cannot be ignored by an attorney on the claim he believes it conflicts with his view of a constitutionally protected right. The purpose of the canons as explained by the ethical considerations, disciplinary rules and adjudicated decisions is to show him the professionally acceptable route through questions or doubts he may have regarding such conflicts.

A lawyer, acting in a professional capacity, may have some fewer rights of free speech than would a private citizen. As was well explained in *In re Woodward,* 300 S.W.2d 385, 393–394 (Mo.1957):

"* * * Neither the right of free speech nor the right to engage in 'political' activities can be so construed or extended as to permit any such liberties to a member of the bar; respondent's action was in express and exact contradiction of his duties as a lawyer. A layman may, perhaps, pursue his theories of free speech or political activities until he runs afoul of the penalties of libel or slander, or into some infraction of our statutory law. A member of the bar can, and will, be stopped at the point where he infringes our Canons of Ethics; and if he wishes to remain a member of the bar he will conduct himself in accordance therewith. * * * ."

The United States Supreme Court had before it an attorney disciplinary proceeding in *In re Sawyer,* 360 U.S. 622, 79 S.Ct. 1376, 3 L.Ed.2d 1473 (1959). On the "free speech" issue respondent raises here, Mr. Justice Stewart, concurring in result, clearly was speaking for at least five members of the court when he said:

"* * * A lawyer belongs to a profession with inherited standards of propriety and honor, which experience has shown necessary in a calling dedicated to the accomplishment of justice. He who would follow that calling must conform to those standards.

"Obedience to ethical precepts may require abstention from what in other circumstances might be constitutionally protected speech. * * * ."

—360 U.S. at 646–647, 79 S.Ct. at 1388, 3 L.Ed.2d at 1489.

IV. We now consider what should be done to discipline respondent. Similar conduct in other jurisdictions has invoked pun-

ishment ranging from admonition to disbarment. See *Spencer v. Dixon,* 290 F.Supp. 531, 537 (W.D.La.1968); *In re Buckley,* 10 Cal.3d 237, 110 Cal.Rptr. 121, 514 P.2d 1201 (1973), cert. denied, 418 U.S. 910, 94 S.Ct. 3202, 41 L.Ed.2d 1156 (1974); *In re Raggio,* 87 Nev. 369, 487 P.2d 499 (1971); *In re Meeker,* 76 N.M. 354, 414 P.2d 862 (1966), appeal dismissed, 385 U.S. 449, 87 S.Ct. 613, 17 L.Ed.2d 510 (1967); cf. *In re Whiteside,* 386 F.2d 805 (2 Cir. 1967), cert. denied, 391 U.S. 920, 88 S.Ct. 1804, 20 L.Ed.2d 657 (1968); *State v. Nelson,* 210 Kan. 637, 504 P.2d 211 (1972).

■ We have rejected as justification respondent's present assurances as to what were his subjective intentions when the petitions for rehearing were filed. Although not constituting excuse or justification his intent is important in the disposition of this proceeding. 7 Am.Jur.2d, Attorneys at Law, § 30, pp. 61–62; 12 A.L.R.3d at 1415–1417.

■ We accept respondent's written assurances he did not intend to show any disrespect or defiance to this court or to be disrespectful or offensive to any member of it. He denies he intended to make any accusation, false or otherwise, against any member of this court or any court. He states that it has always been his intent to be respectful, courteous and aboveboard in his relations with this and all other courts. He expressed the belief he was acting in good faith and in accordance with what he perceived to be his responsibility as an advocate for his client.

Respondent is admonished his conduct did not meet the demands of the Iowa Code of Professional Responsibility for Lawyers and § 610.14(1), (5), The Code. In view of his assurances as to his intent we see no need to consider reprimand, censure, suspension or any other discipline at this time.

Attorney admonished.

All Justices concur.