**KENTUCKY BAR ASSOCIATION, Movant**

**v.**

**Charley Greene DIXON, Respondent.**

**No. 2012–SC–000006–KB.**

Supreme Court of Kentucky.

Aug. 23, 2012.

*OPINION AND ORDER*

Charley Greene Dixon[1] was admitted to practice law in Kentucky in 1989. In July 2008, the Inquiry Commission issued a two-count Charge against Dixon, alleging violations of Kentucky Supreme Court Rules (SCR) 3.130–1.15(b) and 3.130–8.3(c).[2] The Charge relates to misconduct regarding Dixon's attorney escrow account.

After an evidentiary hearing and briefing by the parties, the trial commissioner found Dixon not guilty of the charges. Despite finding Dixon not guilty of all charges, the trial commissioner recommended that Dixon be reprimanded and ordered to pay the costs of the proceedings. He did so because, in his estimation, Dixon violated the spirit of the Rules, there was a global appearance of impropriety by Dixon, his conduct could bring the Bar into disrepute, and Dixon should have known not to use his escrow account as "banking services" for individuals. Because a sanction can only be imposed where an attorney is found guilty of violating the Kentucky Rules of Professional Conduct, the trial commissioner amended his report, redacting the recommendation for a reprimand and assessment of costs.

The KBA did not file a notice of appeal. But, under SCR 3.370(9), the Court elected to review the trial commissioner's decision. After briefing by Dixon and Bar Counsel, the Court finds that Dixon violated SCR

---

1. Kentucky Bar Association (KBA) Member No. 83022; bar roster address, 268 Park Avenue, Barbourville, Kentucky 40906.

2. The events that gave rise to this matter occurred before the July 2009 amendments to the Kentucky Rules of Professional Conduct went into effect. So we apply the Kentucky Rules of Professional Conduct in effect before July 2009.

3.130–1.15(b) but did not violate SCR 3.130–8.3(c).

## I.  KBA FILE NO. 14733.

At the time of the conduct in question, Dixon was the elected Knox County Attorney, which is a part-time position.  He also maintained a private practice and kept an escrow account related to it.  He had a friendship of longstanding with the Knox County Judge–Executive at the time, Raymond Smith.  They had been friends since high school.  Their offices were in the same building, and they saw each other nearly every day.  Dixon had represented Smith for approximately fifteen years on various legal matters.  And Dixon considered himself "the Smith family attorney."

In February 2005, Dixon agreed to cash a check for Raymond Smith.  Raymond Smith then left four checks on Dixon's desk while Dixon was away.  These checks were from various companies, totaling over $12,000, payable to Total Timber, Inc. The backs of the checks were signed "Total Timber, Inc." and "Matt Smith."  Matt Smith is Raymond Smith's brother.  Dixon did not have the financial resources to cash these checks, and he could not reach Raymond Smith by phone to arrange to return them.  So, to safeguard the checks in his possession, Dixon deposited them into his attorney escrow account.  That same day, following Raymond Smith's instructions, Dixon wrote a check out of his escrow account to Matt Smith's wife for the total amount of the four checks.

Two months later, Dixon deposited checks totaling about $35,000 into his attorney escrow account.  He then wrote checks from that account to Matt Smith for the exact amounts deposited.

In May 2005, Dixon deposited a $12,000 cashier's check, payable to Grade All Construction, into his escrow account.  That same day, Dixon wrote a check out of his escrow account to Matt Smith for the exact amount.

Around the same time, Dixon deposited another check for around $12,000, payable to Grade All. This check was drawn on the Knox County Road and Bridge Fund. Dixon later wrote a check from his escrow account for that exact amount to Matt Smith.

A month later, Dixon deposited into his escrow account another $12,000 check, payable to Grade All and purportedly indorsed by Grade All and Lonnie Isom. This check was drawn on the Knox County Road and Bridge Fund. Dixon also deposited a check, payable to Total Timber and purportedly indorsed by Total Timber and Matt Smith, for around $2,000.  He then wrote a check for the exact amount of the two checks to Matt Smith.

In summary, between February and June of 2005, Dixon deposited eleven checks into his attorney escrow account at Raymond Smith's request.  These checks were payable to Total Timber or Grade All. Two of the checks were drawn on the Knox County Road and Bridge Fund. Following Raymond Smith's instructions, Dixon remitted these funds to Matt Smith (and issued one check to Matt Smith's wife).  These checks were all left at Dixon's office by Raymond or Matt Smith. Raymond Smith contacted Dixon each time and asked him to cash the checks.  Dixon deposited the checks into his escrow account rather than cash them.

An FBI investigation uncovered a money-laundering scheme perpetrated by Raymond and Matt Smith.  Raymond Smith used his position as Knox County Judge–Executive to create false bids and invoices for county construction projects.  He laundered the money through various accounts, including Dixon's attorney escrow account. Raymond and Matt Smith pled guilty to

federal charges. Evidence before the trial commissioner included an affidavit from the FBI agent on the case, stating that Dixon was not charged with a crime because prosecution of Dixon required Raymond Smith's assistance, which was unlikely.

The Inquiry Commission issued a two-count charge, alleging Dixon violated (1) SCR 3.130–1.15(b),[3] by receiving over $85,000 in checks, made payable to specific businesses, making no effort to notify those businesses that he had received those funds, then paying the funds to a third party; and (2) SCR 3.130–8.3(c),[4] by depositing checks into his escrow account, which were payable to certain companies, then issuing checks in those amounts to individuals, not the payees on the checks.

## II. DIXON VIOLATED SCR 3.130–1.15(B).

The trial commissioner found that Dixon's actions were not governed by SCR 3.130–1.15(b) and that even if they were governed by the rule, Dixon properly distributed the funds from his escrow account. We disagree.

The professional rule of conduct regarding safekeeping property, SCR 3.130–1.15(b), applied to Dixon's actions. Dixon violated that rule by failing to notify Total Timber and Grade All that he received funds in which the corporations had an interest and by distributing those funds to a third party.

### A. SCR 3.130–1.15(b) Applies to Dixon's Actions.

■ The trial commissioner found that Dixon's actions in depositing the funds into his escrow account and remitting them to Matt Smith and his wife were not governed by SCR 3.130–1.15(b) because the deposits were not related to an attorney-client relationship between Dixon and the Smiths. Citing a KBA publication, *Client Trust Account*, the trial commissioner found that "[i]f no legal relationship exists, then [Dixon] assumes fiduciary responsibility for these funds and is charged to [safeguard] any property received." The parties did not address Dixon's fiduciary duties. So the trial commissioner found Dixon not guilty of the charged ethical violations.

The trial commissioner was correct that SCR 3.130–1.15(b) applies only when use of an escrow account is associated with legal representation. Comment 4 of the Rule (before the 2009 Amendments) states, "The obligations of a lawyer under this Rule are independent of those arising from activity other than rendering legal services. For example, a lawyer who serves as an escrow-agent is governed by the applicable law relating to fiduciaries even though the lawyer does not render legal services in the transaction." The amended comment (Comment 6) is even clearer, providing, "For example, a lawyer who serves only as an escrow agent is governed by the applicable law relating to fiduciaries even though the lawyer does not render

---

**3.** SCR 3.130–1.15(b) provides, "Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is

entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property."

**4.** SCR 3.130–8.3(c) provides, "It is professional misconduct for a lawyer to: engage in conduct involving dishonesty, fraud, deceit[,] or misrepresentation."

legal services in the transaction **and is not governed by this Rule."** [5]

The KBA argues that legal representation is implicated by the fact that Dixon used the escrow account related to his private law practice, which is an improper use of an attorney escrow account. The trial commissioner rejected this argument. He relied on the *Client Trust Account* KBA publication, which provides that "depositing professional fiduciary funds in a client trust account is apparently not prohibited." But Dixon was not depositing **professional** fiduciary funds. The KBA publication provides,

> Many lawyers provide professional fiduciary services such as trustee, guardian, personal representative of an estate, attorney-in-fact, and escrow agent. In some cases[,] the lawyer provides legal services along with fiduciary services. In other cases[,] no legal services are involved[;] and the lawyer is compensated solely for professional fiduciary services; *e.g.,* escrow agent. This presents the question of whether funds held by a lawyer performing these services should be deposited in a client trust account (pooled or dedicated) or a fiduciary account separate and distinct from all law firm client trust accounts.
>
> Notwithstanding Rule 1.15, Comment (6)[,] that provides "... a lawyer who serves only as an escrow agent is governed by the applicable law relating to fiduciaries ... and is not governed by this Rule," Comment (1) to the Rule appears to allow funds received by a lawyer acting as only a professional fiduciary to deposit funds in a client trust account:

> All property which is the property of clients or third persons, including prospective clients, must be kept separate from the lawyer's business and personal property and, if monies, in one or more trust accounts. Separate trust accounts may be warranted when administering estate monies or acting in similar fiduciary capacities.

Depositing professional fiduciary funds in a client trust account is apparently not prohibited and may be a satisfactory way of safekeeping these funds if the lawyer is otherwise in compliance with laws governing fiduciaries. There are, however, several reasons why this is not good policy.... [6]

The KBA guidance on this point is directed toward lawyers providing professional fiduciary services. It does not anticipate a lawyer using his client trust account to provide check-cashing services for friends and clients. Dixon did not deposit Smith's checks into his escrow account as part of a legitimate professional fiduciary service.

Dixon claims, and the KBA does not protest, that he did not deposit the checks in his official capacity as Knox County Attorney or in relation to Dixon's legal representation of the Smiths. But even though Dixon was not providing legal representation to the Smiths regarding the questioned funds, Dixon's actions were an extension of his legal relationship with Smith. Over the fifteen years leading up to the KBA action, Dixon performed various legal services for Raymond and Matt Smith and their grandfather. He considered himself "the Smith family attorney." And he assumed that at the time of the events at issue, the Smith family would

---

**5.** Emphasis added.

**6.** *Client Trust Account: Principles and Management for Kentucky Lawyers,* p. 15, 2d ed. (2010), http://kybar.org/documents/inside_kba/kbf_iolta/iolta_booklet.pdf.

have referred to him as their attorney. "Whether or not the relation is one of attorney and client, it grows out of the attorney client relation[ ] and reflects credit or discredit upon the legal profession according to the integrity of the behavior of the lawyer." [7]

■■■ "The purpose of the Kentucky Bar Association is to maintain a proper discipline of the *members of the bar* [.]" [8] And "a licensed attorney undertaking to act as an escrow agent remains subject to the Kentucky Rules of Professional Conduct" because of his status as a licensed attorney.[9] Because Dixon's actions in depositing the checks and distributing the funds were undertaken as an extension of his professional, attorney-client relationship with the Smith family, and not part of professional fiduciary services, SCR 3.130–1.15(b) applies to this Charge.

## B. Dixon Violated SCR 3.130–1.15(b).

■ Under SCR 3.130–1.15(b), upon receiving funds in which a third person has an interest, a lawyer is required promptly to notify the third person and promptly to deliver to the third person any funds the third person is entitled to receive. Dixon essentially argues that when he received the checks, they were all indorsed in a manner that indicated to him that they were bearer paper. So Smith legally owned the checks because he possessed them; and the payees of the checks, Total Timber and Grade All, did not have an interest in them.

"An instrument payable to an identified person may become payable to bearer if it is indorsed in blank." [10] "If an indorsement [11] is made by the holder of an instrument, and it is not a special indorsement, it is a 'blank indorsement.' When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed." [12]

A corporate indorsement requires a corporate representative's signature.[13] But four of the checks payable to Total Timber were indorsed on the back only with the company name, followed by the signature of Matt Smith. Dixon testified at the formal hearing that he assumed that Matt Smith indorsed all of the checks individually, not on behalf of Total Timber, because Matt Smith did not indicate that he held a corporate office. He also testified that he prepared the articles of incorporation for Total Timber. And it was his understanding at the time of the events that Matt Smith's grandfather was the incorporator,

---

7. *Berke v. Chattanooga Bar Ass'n,* 58 Tenn. App. 636, 436 S.W.2d 296, 306 (1968) (finding a two-year disbarment warranted where, among other misconduct, attorney committed the offense of charging usury in connection with a monetary loan).

8. *Kentucky Bar Ass'n v. Craft,* 208 S.W.3d 245, 257 (Ky.2006) (citation and internal quotations omitted).

9. *Id.* at 258.

10. KRS 355.3–109(3).

11. "[*Indorsement*] means a signature, other than that of a signer as maker, drawer, or acceptor, that alone or accompanied by other words is made on an instrument for the purpose of: (a) Negotiating the instrument." KRS 355.3–204(1).

12. KRS 355.3–205(2).

13. "If a person acting, or purporting to act, as a **representative** signs an instrument by signing either the name of the **represented** person or the name of the signer, the **represented** person is bound by the **signature**...."; **KRS 355.3–402(1).**

"Except as otherwise established, the name of an organization preceded or followed by the name and office of an authorized individual is a signature made in a representative capacity." 10 C.J.S. *Bills and Notes* § 39.

director, registered agent, president, secretary, and treasurer of Total Timber. Dixon did not know if Matt Smith occupied an official position at Total Timber.

Likewise, the checks written to Grade All were purportedly indorsed with the company name and Lonnie Isom. Lonnie Isom was not identified in the indorsement as a corporate officer. And he testified that he never indorsed the checks on behalf of Grade All,[14] nor could he because he was not a corporate officer.[15]

The trial commissioner rejected Dixon's theory that Matt Smith indorsed the checks individually because that would make the indorsement by Total Timber improper for lack of a corporate representative's signature. And despite Dixon's testimony that he considered Matt Smith's signature an individual indorsement not made on behalf of Total Timber, the trial commissioner took the position that Dixon assumed that Matt Smith's signature satisfied the requirement of a corporate representative's signature. And the trial commissioner found that Dixon's assumption was reasonable.[16]

Dixon testified at the evidentiary hearing that he knows a proper indorsement by a company must include the name of the company and a personal representative's signature. And he acknowledged that the indorsements at issue did not qualify as proper corporate indorsements. But he maintained that he believed they were properly indorsed based on local custom.

Despite local practice and the corporate roles that Dixon may have assumed Matt Smith and Lonnie Isom occupied, Dixon admitted that the indorsements were improper on their face. So he was on notice that Total Timber and Grade All had an interest in the checks and that he had a duty to notify them promptly that he received the funds. By failing to do so and by distributing the funds to Matt Smith and his wife, Dixon violated SCR 3.130–1.15(b).

## III. DIXON DID NOT VIOLATE SCR 3.130–8.3(C).

■ "It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit[,] or misrepresentation."[17] Dixon claims that the evidence does not support a finding of fraud, misrepresentation, dishonesty, or deceit. The trial commissioner agreed, finding Dixon not guilty of violating SCR 3.130–8.3(c) because Dixon did not personally benefit from depositing and distributing the checks; no evidence was presented that a client or non-client suffered monetary loss as a result of Dixon's actions; and the commissioner could not determine whom Dixon misrepresented, defrauded, or deceived. Because there was no attorney-client relationship and no victim of Dixon's actions, the trial commissioner believed that there was no one for Dixon to deceive or defraud.

We will not disturb the trial commissioner's finding that the KBA did not prove by

14. The trial commissioner noted that "even to the untrained eye[,] a cursory comparison" showed the indorsements of Lonnie Isom and Matt Smith were in the same handwriting.

15. It was Isom's wife who founded the company.

16. The trial commissioner also found that "the Grade All checks [did not] constitute bearer paper" because the checks indorsed by Grade All and Lonnie Isom lacked indorse-

ments by Matt Smith. Although the checks were not properly indorsed, Matt Smith's failure to indorse the checks is irrelevant. If Grade All properly indorsed the check, it became bearer paper that Raymond or Matt Smith legally owned by possession. Matt Smith's indorsement was not necessary for negotiation.

17. SCR 3.130–8.3(c).

a preponderance of the evidence that Dixon perpetrated fraud, misrepresentation, dishonesty, or deceit. The trial commissioner viewed Dixon as extremely naive and trusting, lamenting the fact that Dixon failed to recognize several serious warning signs. And the trial commissioner, who had first-hand observation of Dixon as he testified, is best situated to assess Dixon's credibility.

But the trial commissioner's inability to discern who could have been defrauded or deceived in this situation is misguided. Dixon's actions had the effect of facilitating Raymond Smith's money-laundering scheme. Two of the checks were drawn on Knox County. So Dixon's actions had the effect of defrauding the county that Dixon represented as county attorney. Other checks were drawn on various corporate accounts whose corporations were similarly defrauded. There clearly were victims of Raymond Smith's money-laundering scheme.

■ We note that a violation of SCR 3.130–8.3(c) does not require the existence of an attorney-client relationship. When a violation of the rule occurs, it is frequently during the course of an attorney-client relationship. But the rule prohibits an attorney from engaging in any conduct involving dishonesty, fraud, deceit, or misrepresentation, even outside of an attorney-client relationship. Not "all disciplinary cases must evolve from [an] attorney's practice of law." [18] And, as we stated above, this Court has recognized that "[t]he purpose of the Kentucky Bar Association is to maintain a proper discipline of the *members of the bar* [.]" [19]

Dixon did not retain any of the funds for himself. Nor did he comingle the funds with his personal money. Although Dixon violated SCR 3.130–1.15(b), the trial commissioner found that he did so because of negligence and naivete and not because he was engaging in deceptive or fraudulent activity. We will not disturb that finding. So we hold that Dixon did not violate SCR 3.130–8.3(c).

## IV.  CONCLUSION.

■ The Court finds that a public reprimand is the appropriate sanction for Dixon. Dixon did not retain any monetary benefit by violating SCR 3.130–1.15(b). And there is no evidence that Dixon engaged in the Smiths' money laundering scheme. Rather, it appears that Dixon was a pawn in the Smiths' criminal conduct. So we reject the KBA's argument that Dixon has earned a 181–day suspension from the practice of law.

Dixon requests a private reprimand if he is found guilty of violating the Kentucky Rules of Professional Conduct. But a greater sanction is called for in this situation. Dixon is an elected official entrusted by the citizens of Knox County to act as Knox County Attorney. As county attorney, Dixon is responsible under the law for giving "legal advice to the fiscal court . . ." and opposing "all unjust or illegally presented claims." [20] And two of the fraudulent checks were drawn on the Knox County Fiscal Court Road and Bridge Fund. Dixon's negligence, extreme naivete, and failure to recognize his own role in facilitating the Smiths' money-laundering scheme defrauded the Knox County Fiscal Court and other corporations.

So we find that a public reprimand and imposition of all costs associated with these proceedings is the appropriate penal-

---

**18.** *Kentucky Bar Ass'n v. Jones,* 759 S.W.2d.61, 63 (Ky.1988).

**19.** *Craft,* 208 S.W.3d at 257 (citation and internal quotations omitted).

**20.** KRS 69.210(3).

ty. For the foregoing reasons, the Court ORDERS:

1) Charley Greene Dixon, KBA Member No. 83022, is guilty of violating SCR 3.130–1.15(b), as alleged in KBA File No. 14733;

2) Dixon is not guilty of violating SCR 3.130–8.3(c), as alleged in KBA File No. 14733;

3) Dixon is hereby issued a public reprimand for violation of SCR 3.130–1.15(b); and

4) Under SCR 3.450, Dixon is ordered to pay all costs associated with this disciplinary proceeding, in the amount of $1,870.67, for which execution may issue from this Court upon finality of this Opinion and Order.

All sitting. All concur.

ENTERED: August 23, 2012.

/s/ John D. Minton, Jr.
    Chief Justice

**KENTUCKY BAR ASSOCIATION,**
**Movant**

v.

**Juliette Alane HOUSE, Respondent.**