**KENTUCKY BAR ASSOCIATION,**
**Complainant,**

v.

**Robert L. HELERINGER, Respondent.**

Supreme Court of Kentucky.

July 15, 1980.

Leslie G. Whitmer, Director, Michael M. Hooper, Asst. Director Kentucky Bar Association, Frankfort, for complainant.

Michael V. Hargadon, Louisville, for respondent.

PER CURIAM.

The Board of Governors of the Kentucky Bar Association concluded that the Respondent's statements at a press conference served to undermine public confidence in the integrity of the judicial process and tended to bring the bench and bar into disrepute. The Board found him guilty of unprofessional conduct as charged and recommended a public reprimand. The Respondent claims that his comments have the protection of the first amendment and has sought review of the board's findings and recommendation. We hold that Respondent's comments made in their context were not speech immune from professional discipline.

This professional misconduct arose out of the events surrounding litigation to determine the constitutionality of an abortion regulation ordinance passed by the Jefferson Fiscal Court, the substance of which Respondent drafted and vehemently supported. A hearing on a Restraining Order to prohibit the enforcement of the ordinance was scheduled for 1:00 p. m. December 19, 1978 before Judge Shobe of the Jefferson Circuit Court. The court had recessed a criminal trial until 1:30 p. m. that day in order to accommodate the hearing. At approximately 12:50 p. m. the assistant county attorney who was to argue against the restraining order on behalf of the fiscal court came to the judge's chambers and requested a short delay of the hearing because he was involved in a proceeding in the Jefferson District Court being held in another part of the building. The court acquiesced.

At 1:30 p. m. court was opened, but the assistant county attorney was not present. The Respondent tendered a motion to intervene in the proceeding on behalf of Right to Life of Louisville, Inc., which the court acknowledged but did not order filed, indicating that he was inclined to overrule the motion at a later date. The court proceeded to hear the motion for a restraining order *ex parte* while Respondent sought out the assistant county attorney. Upon arriving in the circuit court, they found the hearing had been concluded and the restraining order entered at 1:54 p. m.

The following day Right to Life of Louisville, Inc., of which Respondent is a director, called a press conference which was heavily attended by the local media. According to the trial commissioner's findings, the atmosphere was "highly emotional." During the press conference, Respondent called the refusal of Judge Shobe to wait longer for or to seek out the assistant county attorney "highly unethical and grossly unfair." This remark is the basis for this disciplinary action.

At the outset we note that there is no question as to the content of the statement. Indeed, Respondent defended the substance of the remarks in a reply to the Bar Association stating, "I did indeed describe Judge Shobe's actions that day as unethical and unfair. Let there be no doubt that I absolutely stand by the merits of that evaluation and will, under no circumstances, retract them."

This court "recognizes and accepts the principles embodied in the American Bar Association's Code of Professional Responsibility as a sound statement of the standards of professional conduct required of members of the bar, . . . ." SCR 3.130. DR 1–102(A)(5) directs "A lawyer shall not engage in conduct that is prejudicial to the administration of justice." DR 8–102(B) states "A lawyer shall not knowingly make false accusations against a judge or other adjudicatory officer."

CR 65.03 permits restraining orders to be issued "without notice" on an *ex parte* basis. As a member of the practicing bar Respondent knew, or should have known, that an *ex parte* disposition of the application for a restraining order was proper at the time he participated in the press conference. On the other hand, the general lay public would not have been aware that a restraining order could be issued without an adversary hearing. Respondent's assertion at the highly charged press conference

raised the specter of a judicial officer being in complicity with the opponents of the ordinance, of one who abused the awesome power of injunctive relief. While we neither approve nor condemn the court's decision to proceed *ex parte* in a politically sensitive hearing, his conduct was not "highly unethical and grossly unfair" as Respondent charged during the press conference. The court acted within the discretion given by the Civil Rules.

■ The precedent of *Kentucky Bar Association v. Nall*, Ky., 599 S.W.2d 899 (April 22, 1980) would ordinarily require us to decide this case against the Respondent at this point. However, he asserts that his comments cannot be the basis for disciplinary action against him because it should be considered protected speech under the first amendment. This point requires a delicate balancing of the interests in upholding the integrity of our judicial system and in protecting an attorney's right to free expression.

■ The United States Supreme Court has addressed this issue generally in the case of *In re Sawyer*, 360 U.S. 622, 79 S.Ct. 1376, 3 L.Ed.2d 1473 (1959). There the court in a five to four decision evaluated the record and held that the conduct of Sawyer during a public speech did not impugn the integrity of the judge in a current Smith Act trial. The court held that the lawyer's comments about the "shocking and horrible things that go on at the trial" and that "[t]here's no such thing as a fair trial in a Smith Act case" were fair criticism of the law itself and the federal government's prosecutorial policy, not personal criticism aimed at the particular trial judge. The court began "with the proposition that lawyers are free to criticise [sic] the state of the law." *In re Sawyer*, supra at 631, 79 S.Ct. at 1380. Criticism of the law is not, *per se*, impermissible criticism of the judicial system. In the words of the *Sawyer* court, "To say that 'the law is an ass, a idiot' is not to impugn the character of those who must administer it." *Id.* at 634, 79 S.Ct. at 1382.

The court also noted that "a lawyer may criticize the law-enforcement agencies of the Government, and the prosecution, even to the extent of suggesting wrongdoing on their part, without by that token impugning the judiciary." *Id.* at 632, 79 S.Ct. at 1381. Next, the court stated that a lawyer can properly criticize a judge's view of the law. "If [the judge] was said to be wrong on his law, it is no matter; appellate courts and law reviews say that of judges daily, and it imputes no disgrace. Dissenting opinions in our reports are apt to make [the lawyer's] speech look like tame stuff indeed. [She] did not say [the judge] was corrupt or venal or stupid or incompetent. The public attribution of honest error to the judiciary is no cause for professional discipline in this country." *Id.* at 635, 79 S.Ct. at 1383.

Finally, the court noted that "surely permissible criticism may as well be made to a lay audience as to a professional." *Id.* at 632, 79 S.Ct. at 1381. "A lawyer does not acquire any license to do these things by not being presently engaged in a case. They are equally serious whether he is currently engaged in litigation before the judge or not. We can conceive no ground whereby the pendency of litigation might be thought to make an attorney's out-of-court remarks more censurable, other than that they might tend to obstruct the administration of justice." *Id.* at 636, 79 S.Ct. at 1383.

Implicit in this statement of permissible criticism of the law and judiciary by the *Sawyer* court is that instances can exist wherein an attorney's criticism and conduct would be impermissible and the proper subject of professional oversight. We observe, as did the court in *Matter of Frerichs*, Iowa, 238 N.W.2d 764 (1976), that Justice Stewart concurring in the result of *Sawyer*, was speaking for five members of the court when he stated:

"If, as suggested by my Brother Frankfurter, there runs through the principal opinion an intimation that a lawyer can invoke the constitutional right of free speech to immunize himself from evenhanded discipline for proven unethical

conduct, it is an intimation in which I do not join. A lawyer belongs to a profession with inherited standards of propriety and honor, which experience has shown necessary in a calling dedicated to the accomplishment of justice. He who would follow that calling must conform to those standards.

Obedience to ethical precepts may require abstention from what in other circumstances might be constitutionally protected speech."

*In re Sawyer*, supra at 646–47, 79 S.Ct. at 1388 (Stewart, J., concurring.)

We have previously, yet infrequently, had occasion to review charges of professional misconduct by attorneys who by their conduct and comments chip away at public confidence in the integrity of the judicial system. In *Kentucky State Bar Association v. Lewis*, Ky., 282 S.W.2d 321 (1955) the attorneys involved charged in pleadings and in the local newspaper that a change in the assignment of special judges was politically motivated. We recognized that an attorney, just as any citizen, has the right to criticize the courts and their decisions, but charges of corruption or unethical conduct must be made only in good faith supported by substantial competent evidence. The attorney "owes it to himself as an attorney, to his profession, and to the Court to help maintain the dignity and decorum of the Court, and thus maintain the respect of the people for judicial processes." *KSBA v. Lewis*, supra, at 324. Recently, in *KBA v. Nall*, supra, we applied this rule to an attorney who described a proceeding before a hearing officer of an administrative body as a "mere farce" and a "Kangaroo court" during a radio station interview. Insolent, impudent, and derogatory conduct can only serve to bring the judicial system into discredit in the public mind. *See also Kentucky Bar Association v. Getty*, Ky., 535 S.W.2d 91 (1975) *cert. denied*, 423 U.S. 1048, 96 S.Ct. 773, 46 L.Ed.2d 636.

We are not alone in our opinion that by coming to the bar an attorney incurs the ethical obligation not to bring the bench and bar into disrepute by unfounded public criticism. "Our system of justice rests upon the mutual regard of the bench and bar." *Matter of Frerichs*, supra at 766. "[I]n the case of a lawyer an abuse of the right of free speech may be some index of his character or fitness to be a lawyer." *In re Lacey*, S.D., 283 N.W.2d 250, 252 (1979) *quoting In re Gorsuch*, 76 S.D. 191, 75 N.W.2d 644, 57 A.L.R.2d 1355 (1956). "Nor does free speech give a lawyer the right to openly denigrate the court in the eyes of the public." *In re Raggio*, 87 Nev. 369, 371, 487 P.2d 499, 500 (1971). *See also, In re Glenn*, 256 Iowa 1233, 130 N.W.2d 672, 12 A.L.R.3d 1398 (1964); ABA Code of Professional Responsibility, EC 8–6; Annot., 12 A.L.R.3d 1408; Annot., 56 L.Ed.2d 841, 855–69. *But see, Justices of the Appellate Division v. Erdmann*, 33 N.Y.2d 559, 347 N.Y.S.2d 441, 301 N.E.2d 426 (1973); *State Bar v. Semaan*, Tex.Civ.App., 508 S.W.2d 429 (1974); *Polk v. State Bar of Texas*, N.D.Tex., 374 F.Supp. 784 (1974).

We conclude as did the Board of Governors that Respondent's public attribution of "highly unethical and grossly unfair" behavior to a named sitting judge, a charge that Respondent knew, or should have known, was unwarranted, was unethical and unprofessional conduct tending to bring the bench and bar into disrepute and to undermine public confidence in the integrity of the judicial process. If the Respondent had had reason to believe in good faith that the trial judge had engaged in proscribed conduct, then the proper forum in which to have made his claim was the Judicial Retirement and Removal Commission as provided in our Constitution, Section 121, and in our rules of court, SCR 4.000–4.300.

Taking into account the sincerity of the Respondent, his relative inexperience at the bar, the emotional issue involved, and our recent disposition of a similar case, we concur with the recommendation of the Board of Governors that Respondent be publicly reprimanded. However, while two recent instances such as this one may be a coincidence, three would certainly indicate an unwelcome trend. It is enough to say that in the future a stiffer penalty may be imposed. *See KSBA v. Lewis*, supra.

"[E]very lawyer, worthy of respect, realizes that public confidence in our courts is the cornerstone of our governmental structure, and will refrain from unjustified attack on the character of judges, while recognizing the duty to denounce and expose a corrupt or dishonest judge." *KSBA v. Lewis*, supra, at 326.

This court finds the Respondent, Robert L. Heleringer, guilty of unprofessional and unethical conduct which tended to bring the bench and bar of the Commonwealth of Kentucky into disrepute. He is hereby publicly reprimanded and directed to pay the costs of these proceedings.

All concur.