TO BE PUBLISHED

# Supreme Court of Kentucky

2023-SC-0104-KB

KENTUCKY BAR ASSOCIATION                                    MOVANT

IN SUPREME COURT
V.

RICHARD BOLING                                              RESPONDENT

## OPINION AND ORDER

The Kentucky Bar Association (KBA) initiated these disciplinary proceedings against Richard Boling in February 2020 which are now before this Court for final resolution. The Trial Commissioner rendered his findings on December 7, 2022 and the parties agreed to submit these proceedings to this Court pursuant to Kentucky Supreme Court Rule (SCR) 3.370. As such, Boling does not oppose the Trial Commissioner's recommended five-year suspension. Finding good cause, we agree with the recommended discipline. Preliminarily, we note that Richard Boling, KBA Member No. 86116, was admitted to practice law in this Commonwealth on October 16, 1995. His bar roster address is 512 South Abbey Way, Hopkinsville, Kentucky 42240.

## BACKGROUND

This case involves two KBA disciplinary matters. First, KBA File 20-DIS-0010, which involves a letter Boling wrote in support of a pardon for Dayton

Jones. This Court rejected Boling's motion for a negotiated sanction in a confidential opinion issued on October 29, 2020. Second, KBA File 20-DIS-0056, which involves Boling's prosecutorial misconduct as addressed by this Court in *Brafman v. Commonwealth*, 612 S.W.3d 850 (Ky. 2020). These matters were both presented to the Court by way of Boling's motion for a negotiated sanction, which this Court rejected in a confidential opinion rendered April 29, 2021. We address each disciplinary matter in turn.

## KBA File 20-DIS-0010 - The Jones Matter

Boling served as an Assistant Commonwealth's Attorney in Christian County from 1997 until 2000 when he became the Christian County Commonwealth's Attorney. In 2006, Boling was defeated for a second term by Lynn Pryor, and he subsequently returned to private practice. In November 2018, Boling won the general election for Christian County Commonwealth's Attorney, defeating Pryor, and took office in January 2019.

This disciplinary matter arises from a letter Boling sent to then-Governor Matt Bevin on December 9, 2019, concerning a pardon request for Dayton Jones. In October 2014, Jones and others were drinking alcohol, and when one of the boys passed out, Jones and others sexually assaulted him. A video of the assault was posted on social media. Jones and others involved were indicted. The case was initially prosecuted by Christian County Commonwealth's Attorney Lynn Pryor. However, because Pryor's daughter was present at some point during the 2014 incident, Pryor disqualified herself, and

2

special prosecutors were appointed. At no time was Boling a prosecutor in Jones's case.

Jones entered a guilty plea to sodomy in the first degree, wanton endangerment in the first degree, and distribution of matter portraying a sexual performance by a minor in the first degree. On December 1, 2016, he was sentenced to fifteen years in prison by the Christian Circuit Court.

Between 2014 and 2018, Jones's grandparents, Mr. and Mrs. Jones, occasionally contacted Boling with questions regarding events in the criminal case. They also expressed concerns about how the prosecution was proceeding. Boling generally viewed their statements to him as simply venting regarding their grandson's case. Notably, in March 2018 the Joneses each contributed $1,500 to Boling's election campaign.

On December 6, 2019, Mrs. Jones contacted Boling. The following day, Boling spoke with Mrs. Jones on the phone and she asked Boling to write a letter to Governor Bevin concerning a pardon request for her grandson. She indicated that they were seeking a pardon but did not specifically indicate whether a Pardon Application had already been filed. Unbeknownst to Boling, Jones had filed a *pro se* application for pardon or commutation on November 27, 2019, and Governor Bevin's General Counsel had already recommended Jones receive a pardon or have his sentence commuted.

On December 7, 2019, Boling, as requested, began drafting a letter to Governor Bevin in support of a pardon. Governor Bevin's term was set to end at midnight on Monday, December 9, 2019. Boling testified that he finished

3

drafting the letter on December 9 and sent it to Mrs. Jones that day.

Therefore, he had Saturday evening, all day Sunday, and a period of time on

Monday to reflect before he sent the letter.  The letter was written on Boling's

official Commonwealth's Attorney letterhead and made statements about

Jones's case, including the following:

> (1) The case was handled outside "normal protocol" to allow then-Commonwealth's Attorney Lynn Pryor to "work hand in hand with Beshear to ensure that Jones was punished to get back at his grandparents."
>
> (2) "This case was never sexual assault.  There was no sexual gratification involved . . . .  Jones should have been offered a guilty plea to Assault 2nd Degree or Wanton Endangerment First Degree."
>
> (3) Jones was "targeted" and "evidence was destroyed."
>
> (4) The prosecution did not "pass the smell test."
>
> (5) "Jones [sic] biggest problem is that the Democratic Party controlled the prosecutor, the judge he stood before and Jones' own attorney.  Then you bring in Andy Beshear to make sure that the locals are keeping control, while legally having been removed from the case."[1]
>
> (6) "He [(Dayton Jones)] needs your help to fix the corruption that exists between the local democratic party and Attorney General Andy Beshear's Office."

Ultimately, Governor Bevin commuted Jones's sentence to time served.

The Governor's decision to commute the sentence, and Boling's letter,

received media attention.  Thereafter, Boling issued a public statement

---

[1] The letter states that "Tony and Jackie Jones were longtime supporters of the local Democratic Party.  They got to a point where they could no longer condone the conduct of the party.  They upset the then Commonwealth's Attorney and other local elected officials."

4

apologizing to the community and indicated that he was merely trying to advise the Governor of the Joneses' beliefs. However, he failed to note in the letter that he was expressing their beliefs as opposed to his own. In his public apology, Boling stated that he does not believe the court system or the Attorney General's office was politically motivated in its handling of the case.

On January 10, 2020, Boling met with the two Circuit Judges in the Christian Circuit Court and specifically apologized to each judge. At that time, Boling stated he was removing himself from their respective courtrooms for the next few weeks. On January 17, 2020, both judges indicated they had filed, or were going to file, a request for disciplinary inquiries by the KBA. Both judges indicated that during the pendency of the KBA proceedings neither felt comfortable with Boling personally appearing before them. As a result, Boling and the judges reached an informal agreement that, during the pendency of the disciplinary inquiry, Boling would not personally appear before either judge unless the judge specifically requested his appearance.[2]

The Inquiry Commission issued an Inquiry Commission Complaint on February 28, 2020. The Complaint alleges violation of SCR 3.130(8.4)(c), which prohibits a lawyer from engaging in dishonest conduct, and SCR 3.130(3.3)(a)(1) which states "[a] lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal or fail to correct a false statement of

---

[2] Since January 9, 2020, Boling has only personally appeared in Christian Circuit Court twice and via Zoom twelve times and only when one of the judges specifically requested his appearance.

5

material fact or law previously made to the tribunal by the lawyer." Additionally, the Complaint alleges violation of SCR 3.130(8.2)(a), which states, "[a] lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer, or of a candidate for election or appointment to judicial or legal office."

Boling responded to the Inquiry Commission Complaint on April 30, 2020. According to Boling, he prepared the letter to Governor Bevin under narrow time circumstances and based the contents of the letter on information previously provided to him by the Joneses. He did not review any documents prior to writing the letter. Boling also stated that he genuinely believed the criminal case against Jones and the other defendants had been wrongly charged. While all defendants deserved punishment, he did not believe the facts supported a sexual assault charge. The broader statements regarding politics and possible motives of those involved in the case were based on beliefs of the Joneses, which were not Boling's own beliefs. However, Boling failed to distinguish the portions of the letter addressing legal issues from the political and subjective statements, the latter of which he should have expressly attributed to the Joneses.

On September 11, 2020, Boling filed a motion for consensual discipline pursuant to SCR 3.480(2). That rule states:

> The Court may consider negotiated sanctions of disciplinary
> investigations, complaints or charges prior to the commencement
> of a hearing before a Trial Commissioner under SCR 3.240. Any
> member who is under investigation pursuant to SCR 3.160(2) or

6

who has a complaint or charge pending in this jurisdiction, and who desires to terminate such investigation or disciplinary proceedings at any stage of it may request Bar Counsel to consider a negotiated sanction. If the member and Bar Counsel agree upon the specifics of the facts, the rules violated, and the appropriate sanction, the member shall file a motion with the Court which states such agreement . . . . The Court may approve the sanction agreed to by the parties, or may remand the case for hearing or other proceedings specified in the order of remand.

Boling asked this Court to enter a public order imposing a sixty-day suspension, probated for one year, conditioned on Boling: (1) during the probation period, receiving no new disciplinary charges arising from any disciplinary proceeding instituted after entry of the order, in which event the KBA Office of Bar Counsel may seek to revoke his probation; and (2) paying all costs of this disciplinary proceeding. While Boling acknowledged violation of SCR 3.130(8.2)(a) and SCR 3.130(8.4)(c), he asserted that his conduct did not violate SCR 3.130(3.3)(a)(1) because the letter did not constitute a submission to a tribunal as described by SCR 3.130(1.0)(m), which defined "tribunal" as

an arbitrator in a binding arbitration proceeding or a legislative body, administrative agency, disciplinary or admissions entity created by the Supreme Court, or other body acting in an adjudicative capacity. A legislative body, administrative agency or other body acts in an adjudicative capacity when a neutral official, after the presentation of evidence or legal argument by a party or parties, will render a binding legal judgment directly affecting a party's interests in a particular matter.

Boling submitted that the Governor's exercise of the constitutional executive discretionary function of pardon or commutation is not an adjudicative function. Therefore, he requested that the alleged SCR 3.130(3.3)(a)(1) violation be dismissed.

7

The KBA had no objection to Boling's motion for consensual discipline and stated that, after reviewing the facts and relevant case law, it determined that a sixty-day suspension, probated for one year, was appropriate, citing several cases. On October 29, 2020 this Court rejected the motion for consensual discipline. We found Boling's conduct was particularly egregious because he was the Christian County Commonwealth's Attorney at the time he wrote the letter, he used his official Commonwealth's Attorney letterhead, and he signed the letter as the Commonwealth's Attorney. Because Boling wrote the letter in his official capacity, it undoubtedly conveyed to the Governor that the current Commonwealth's Attorney was in favor of the pardon. The Court denied Boling's motion to impose a sixty-day suspension, probated for one year, and remanded KBA file number 20-DIS-0010 to the KBA for further proceedings pursuant to SCR 3.480(2).

### KBA File 20-DIS-0056 - The Brafman Matter

Meanwhile, on May 4, 2020 the Inquiry Commission initiated a complaint against Boling for prosecutorial misconduct. On April 8, 2019 Boling represented the Commonwealth in the trial of Karen Brafman in Christian Circuit Court. Brafman, who suffered from mental illness since childhood, was charged with two counts of arson and six counts of attempted murder arising from the attempted burning of a house trailer. The police reports attached to the Inquiry Commission Complaint indicated that Brafman had been harassing her neighbors, an interracial couple and their four interracial children, by threatening and yelling racial slurs at them. Kentucky

8

State Police Detective Scott Steward investigated the crimes and testified at trial. Boling avoided eliciting information from Steward about Brafman's intoxication and eventually opposed a voluntary intoxication jury instruction and argued the only evidence of intoxication was the defendant's uncorroborated testimony.

During a lunch break in the course of the trial Boling discussed Brafman's intoxication with Detective Steward at counsel table. Unbeknownst to both men, the court's video system was still on and their conversation was recorded:

**Steward**: So what do you think? Shit, this thing's flying.

**Boling**: I know.

**Steward**: I've never had a trial go this fast. I mean, is that good?

**Boling**: Straightforward. I mean, this is bullshit (pointing to defense table).

**Steward**: I thought he'd ask me more. Shit.

**Boling**: See, what I think he thinks is he's waiting for Calloway[3] to get up here. I ain't putting him on. This whole bullshit of she doesn't remember.

**Steward**: I don't give a shit.

**Boling**: Well, here's my thing you don't remember, but you remember drinking with him. You remember all this other stuff but you can't remember this? Nah, nah. That's selective memory.

**Steward**: Well that's so screwed up she can't. I mean, whatever.

**Boling**: Yeah.

---

[3] Calloway refers to Craig Calloway who lived in the trailer Brafman set on fire.

**Steward**: She knew enough to run over, strip her clothes off, wash 'em, take a shower.

**Boling**: Yeah. Yep. I thought about putting you back on and saying did she look like she was high?

**Steward**: Well, she was out of her fricking mind.

**Boling**: That's why I didn't ask that question (laughter).

**Steward**: Yeah and I didn't want to answer that question so . . .

**Boling:** That's why I didn't ask that.

**Steward**: I was waiting for him to start down that road and go well you know.

**Boling**: And you see that's why I didn't go there because I'm thinking you know she was all over the place.

**Steward**: She was.

**Boling**: Okay, yeah that one could be argued.

**Steward**: She was meth-ed out.

**Boling**: And none of that's in the record. As far as what the record has in it is she took a shower.

At trial Brafman maintained that she was intoxicated and did not remember anything that happened from the early morning hours before the fire until the police arrested her. Brafman was the only witness to testify to her intoxication. Brafman's voir dire and opening statement also contemplated voluntary intoxication as a defense, specifically that she was too intoxicated to form legal intent or to remember what happened.

Later that afternoon the trial court heard arguments concerning jury instructions. Defense counsel requested a voluntary intoxication jury

instruction based on Brafman's testimony that she had been awake for five days, was taking methamphetamine and ecstasy after drinking all day, and had not been taking medications prescribed to her. Boling opposed the voluntary intoxication instruction, stating, "I don't think there's been sufficient establishment that she was voluntarily intoxicated enough to not know what she was doing." The trial court declined to give a voluntary intoxication instruction because Brafman's testimony regarding her intoxication was uncorroborated.

During closing argument, Boling argued that Brafman was not truthful regarding her use of drugs and that no one testified that she appeared under the influence:

> It's not drugs, it's not high. *Not one single witness testified to you that she appeared under the influence, intoxicated, drugged or anything.* Not one. Deputy Sanderson testified. He talked to her. Did he say, 'Man, she looked like she was high. She looked like she was crazy. She didn't know what she was doing.'? No. *Detective Steward testified. Did he testify to that? No.*

*Brafman*, 612 S.W.3d at 860. On July 3, 2019, Brafman was convicted of first-degree arson, six counts of attempted murder and second-degree arson, four of which were charged as hate crimes. She received a life sentence consistent with the jury's recommendation.

The May 4, 2020, Inquiry Commission Complaint stated that Boling's conduct in the Brafman case may have violated SCR 3.130(3.3)(a)(1) and SCR 3.130(8.4)(c). As noted above, SCR 3.130(3.3)(a)(1) states, "[a] lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal

11

by the lawyer." SCR 3.130(8.4)(c) prohibits a lawyer from engaging in dishonest conduct. Boling responded and requested that the complaint be dismissed, or, in the alternative, held in abeyance pursuant to SCR 3.180(2) because Brafman's appeal was pending in this Court. Boling's response highlights the evidence that established the intentional nature of Brafman's behavior on the day of the fire. Boling stated that the comments he made were off-the-cuff comments and argues that engaging in "armchair quarterbacking" after the fact to take those brief comments out of context of all the other evidence is neither fair nor reasonable. The KBA disciplinary case was held in abeyance pending resolution of Brafman's appeal.

On December 22, 2020, this Court reversed the trial court's judgment and remanded the case for a new trial. *Brafman,* 612 S.W.3d at 871. Boling's conduct was reviewed for palpable error and the Court concluded that reversal was warranted because the alleged misconduct was flagrant. *Id.* at 863. The Court weighed the usual four factors in determining whether Boling's improper conduct was sufficiently flagrant to require reversal:

> (1) whether the remarks tended to mislead the jury or prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused.

*Id.* at 861 (citations omitted).

The Court held that while carefully crafting his questioning to avoid eliciting evidence of Brafman's intoxication was not misconduct, Boling's closing argument constituted flagrant misconduct. *Id.* Although the evidence against Brafman was strong, this Court found the other three factors weighed

12

heavily enough in Brafman's favor to warrant reversal.  *Id.* at 862.

Additionally, Boling knew Brafman's intoxication was material to the case and true and arguing against the voluntary intoxication jury instruction rendered the trial fundamentally unfair.  *Id.*

On February 5, 2021, Boling filed a motion for consensual discipline to resolve both the Jones and Brafman matters.  Boling proposed, and the KBA did not object to, a 120-day suspension with sixty days to serve and sixty days probated for two years conditioned on Boling (1) receiving no new disciplinary Charges arising from any disciplinary proceeding instituted after the entry of said Order, in which event the KBA Office of Bar Counsel may seek to revoke said probation; and (2) paying all costs of these disciplinary proceedings.  That sanction was proposed to resolve both the Jones and Brafman disciplinary matters.

In his motion Boling acknowledged that he should not have objected to the voluntary intoxication instruction and should not have stated to the jury in closing argument that the arson investigator never testified that Brafman appeared intoxicated.  Boling also stated that at trial he subjectively did not believe Brafman was intoxicated at the time she set the fire.  It appeared to him that Brafman took deliberate and intentional steps to set the fire and her conduct was not reflective of someone who was intoxicated.  However, Boling acknowledges that his conduct denied Brafman a fair trial and recognizes his broader duties to the public and the justice system than other attorneys involved in the criminal justice system.

13

Boling has been a criminal trial attorney for twenty-seven years, twelve of those as a prosecutor and nine as the Commonwealth's Attorney. According to Boling this is the first time his prosecutorial actions have ever been characterized as anything other than harmless error. He also acknowledges that his conduct violated SCR 3.130(3.3)(a)(1) and SCR 3.130(8.4)(c) as set out in the Inquiry Commission Complaint. In its response the KBA stated that the proposed 120-day suspension (sixty days to serve, sixty days probated) would appropriately sanction Boling for his misconduct and permit the Christian County legal community to move forward from the events detailed in the Inquiry Commission Complaint.

In an April 29, 2021 Opinion, this Court rejected the proposed 120-day suspension. The Court reasoned that Boling misused his position of trust and committed flagrant misconduct. The Court noted that "our Rules of Professional Misconduct provide varying degrees of discipline, including permanent disbarment. On remand we urge the parties to recognize the serious nature of this misconduct in considering appropriate discipline."

On September 1, 2021, the Inquiry Commission issued a two-count charge against Boling in the Jones matter. Count 1 charged Boling with violation of SCR 3.130(8.2)(a), which states that "a lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge . . . ." The Inquiry Commission charged Boling with violation of this rule when, in the pardon letter, he stated that Jones's "biggest problem is that the Democratic

14

Party controlled the prosecutor, the judge he stood before and Jones' own attorney." Count 2 charged Boling with violation of SCR 3.130(8.4)(c) which provides that "[i]t is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation." The Charge asserted that Boling violated this rule when he made multiple false statements in the letter to then-Governor Bevin in support of a pardon on Jones's criminal case.

On September 15, 2021, the Inquiry Commission filed a three-count charge against Boling in the Brafman matter. Count 1 charged Boling with violating SCR 3.130(3.3)(a)(1) which states "[a] lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." The Inquiry Commission charged Boling with violating this rule because "he took deliberate and calculated actions to mislead the jury in the *Brafman* trial, as found by the Kentucky Supreme Court." Count 2 charged Boling with violating SCR 3.130(3.8)(c), which provides that

> [t]he prosecutor in a criminal case shall . . . make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating information known to the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal.

Count 3 charged Boling with violating SCR 3.130(8.4)(c), which provides that "[i]t is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation." Boling was charged with

15

violation of these rules for making misleading statements to the jury in the *Brafman* trial.

Boling responded to all Charges on November 29, 2021 and acknowledged that there is evidence to support both charges in the Jones matter but contends that there are mitigating factors. Boling contends that he did not violate any of the three counts in the Brafman matter and that his actions as the prosecuting attorney were ethical and legally appropriate. The two Charges were consolidated, a Trial Commissioner was appointed on February 11, 2022 and the hearing in these matters began on August 16, 2022.

During the hearing, the Trial Commissioner heard testimony from several witnesses, including Judge John L. Atkins, John Heck (the Special Prosecutor in Jones's case), and Boling. Judge Atkins testified that he was not controlled by anyone in the Jones case, and that there was no indication of any undue influence by anyone involved. Judge Atkins stated that he was hurt by the allegations in Boling's letter and disappointed. Heck provided additional details about Jones's case, including that the victim was a fifteen-year-old boy who passed out after drinking too much. Jones instigated an assault on the victim by procuring a twelve-to-fourteen-inch sexual toy, removed the victim's pants and inserted it into his anus[4]. The victim required emergency surgery for a perforated bowel, which is a life-threatening condition. Heck testified

---

[4] Notably, in the pardon letter Boling put "sexual assault" in quotes as if to imply that the actions that occurred did not constitute an assault and characterized the victim as a "young adult" when he was in fact fifteen-years old.

about the allegations Boling made in the pardon letter and described the allegations as "complete fiction," "not accurate," and ultimately described the letter as "patently false throughout."

Boling acknowledged that evidence existed to support both Charges in the Jones matter but reiterated that he did not intend to cause harm and took many steps to mitigate any damage he caused. In the Brafman matter, he argues that his conduct was ethical and legally appropriate and that the Court did not have all the relevant information when it rendered its opinion in *Brafman.* The Trial Commissioner considered the ABA Standards for Imposing Lawyer Sanctions and noted that several aggravating and mitigating factors applied to Boling's matters. Ultimately, on December 7, 2022, the Trial Commissioner found Boling guilty of all Charges and recommended that Boling be suspended from the practice of law for five years.

On January 3, 2023, Boling appealed the Trial Commissioner's report and recommendation to the Board of Governors. However, Boling then advised the KBA that he planned to resign as Commonwealth's Attorney, effective February 28, 2023. Boling and the KBA tendered an agreed order which stated that the parties agreed that Boling's appeal to the Board of Governors was withdrawn, that the Disciplinary Clerk shall submit the Trial Commissioner's report to this Court pursuant to SCR 3.370, and that Boling would not oppose the recommended five-year suspension. The Trial Commissioner's findings are now before this Court.

17

## ANALYSIS

The Trial Commissioner recommended a five-year suspension. The KBA and Boling have agreed to this recommendation. Boling's misconduct does not precisely match misconduct in prior attorney disciplinary opinions from this Court. However, there are a few cases previously relied upon by the KBA while proceeding in these disciplinary matters and relied upon by this Court in its two prior confidential Opinions.

In *Kentucky State Bar Association v. Lewis*, 282 S.W.2d 321, 322 (Ky. 1955), attorney Lewis filed an affidavit in support of a motion to require a judge to vacate the bench. In the affidavit Lewis alleged political corruption and conspiracy between several judges, unnamed political bosses, and defendants named in an underlying case. *Id.* at 323. Lewis argued that he prepared the pleading based on an affidavit of his clients and he believed the charges in the affidavit were true. *Id.* at 324. The Court disagreed with Lewis and held that "where [Lewis] makes charges of judicial corruption such as he made here, the attorney must be prepared to introduce substantial competent evidence in support of those charges." *Id.* The Court suspended Lewis from the practice of law for six months. *Id.* at 325.

Boling, like Lewis, relied upon the statements and opinions of the Joneses in preparing the December 7, 2019 letter. Additionally, and unlike Lewis, Boling issued a public apology in which he specifically stated he did not believe the court system was politically motivated. Boling's case is like *Lewis* because Boling made allegations of improprieties within the local justice

18

system, with statements like the prosecution did not "pass the smell test," the Democratic Party controlled the case, and alleging that the Commonwealth's Attorney sought to punish Jones to get back at his grandparents. However, Lewis was suspended for six months, which is clearly less significant than the recommended five-year suspension. Here, Boling's actions cast the criminal justice system in Christian County into disrepute. Additionally, Lewis relied on a sworn statement of his clients in making the allegations of corruption, while Boling supposedly based his letter in part on mere conversations shared with the Joneses. The Brafman matter is also before this Court for consideration in determining whether a five-year suspension is appropriate.

The KBA previously cited *Kentucky Bar Association v. Heleringer*, 602 S.W.2d 165 (Ky. 1980), which involved events surrounding litigation to determine the constitutionality of an abortion regulation ordinance. A party sought a restraining order to prohibit enforcement of the ordinance. *Id.* at 166. Heleringer, who drafted the ordinance, sought to intervene in the action on behalf of Right to Life of Louisville, Inc. *Id.* The Assistant County Attorney was not present at the hearing for a restraining order, and while Heleringer tried to locate him, the trial court entered the restraining order. *Id.* The next day, Right to Life of Louisville, Inc. held a press conference and Heleringer called the judge's refusal to wait longer or find the Assistant County Attorney "highly unethical and grossly unfair." *Id.* That remark was the basis for the disciplinary action, and Heleringer received a public reprimand. *Id.* at 169.

19

*Heleringer* is distinguishable from Boling's case because of the various statements Boling made. Boling essentially alleged misconduct by Pryor, stating she tried to maintain control over the case despite having been removed as prosecutor. He alleged a conspiracy that aimed to punish Jones, and asserted that the Democratic Party controlled the prosecutor, the judge, and Jones's own defense attorney. These sweeping statements, given Boling's lack of personal experience with Jones's case, were unwarranted and unprofessional. This conduct is plainly more egregious than the single statement made by Heleringer. Further, the prosecutorial misconduct committed in the Brafman matter resulted in a new trial, with the Court characterizing Boling's actions as deliberate, calculated, exploitative, and dishonest. *Brafman,* 612 S.W.3d at 863.

In *Kentucky Bar Association v. Blum,* 404 S.W.3d 841, 845 (Ky. 2013), Blum alleged an administrative hearing officer conspired against his client to frame the client and cause the tribunal to rule against the client. Blum also accused the hearing officer of incompetence and involvement in a quasi-legal scheme to defraud Blum's client; claimed the hearing was rigged and a "sham;" and impugned the character of the hearing officer. *Id.* In addition to these accusations, Blum used hostile, argumentative and threatening advocacy throughout the proceedings that formed the basis for the disciplinary action. *Id.* at 856-57. The Inquiry Commission issued a five-count charge against Blum and he was ultimately suspended for 181 days. *Id.* at 858. In its consideration of the appropriate discipline, the Court highlighted SCR 3.510(1),

which requires any member of the bar suspended for more than 180 days to undergo a Character and Fitness Committee review and only resume practice upon this Court's order.

In comparing Boling's case to *Blum,* Boling also has five counts against him in the two Charges. The Jones letter made similarly damning statements against the legal process and its participants. While Blum only received a 181-day suspension, Boling's misconduct resulted in significant media attention and occurred while he was serving the public and our justice system as a Commonwealth's Attorney. Pairing the two instances of Boling's misconduct, five years is an appropriate suspension.

Boling's misconduct is particularly egregious because he was the Christian County Commonwealth's Attorney at the time he wrote the letter, he used his official Commonwealth's Attorney letterhead, and he signed the letter as the Commonwealth's Attorney. Because Boling wrote the letter in his official capacity, it undoubtedly conveyed to the Governor that the current Commonwealth's Attorney was in favor of the pardon. Additionally, as noted above, despite there only being one letter, that letter contained numerous allegations of impropriety and professional misconduct on the part of others. Even though Boling recanted much of what he stated in the letter in his public apology, that does not overshadow the fact that he made the statements in the first place. As to the Brafman matter, we note that

> [a] prosecuting attorney has a broader duty to the public and to our system of justice than to obtain convictions. The Commonwealth's Attorneys represent the people of this state, and in a degree should look after the rights of a person accused of a

crime by endeavoring to protect the innocent and seeing that truth and right shall prevail. . . . [i]t is his duty to present his cause fairly, and not impress upon the jury any deduction that is not from the evidence strictly legitimate.

*Brafman,* 612 S.W.3d at 862-63 (quotations omitted). Boling plainly disregarded these duties.

The Commonwealth's Attorney for Christian County represents the people of that county and is in a position of trust. In *Kentucky Bar Association v. Carmichael,* 244 S.W.3d 111, 112 (Ky. 2008), the Court permanently disbarred a Commonwealth's Attorney who extorted money from criminal defendants in exchange for agreeing not to prosecute. In considering aggravating factors, the Court was particularly troubled by Carmichael's position of authority and influence as a Commonwealth's Attorney. *Id.* at 115. While Carmichael's conduct was certainly more egregious than what is presented here, we consider Boling's position as Commonwealth's Attorney a relevant factor in assessing the appropriate discipline. In *Kentucky Bar Association v. Dixon,* 373 S.W.3d 444, 451 (Ky. 2012), in which Dixon, a County Attorney, requested a private reprimand for his misconduct, the Court determined that the misconduct warranted a greater sanction, in part because Dixon, as an elected official, was "entrusted by the citizens of Knox County to act as Knox County Attorney." *Id.*

Like the Trial Commissioner, we note that Boling has no prior disciplinary history outside of these matters, which serve as mitigation in considering the appropriate discipline. In addition, Boling issued a press release apologizing for his actions in the Jones matter and personally

22

apologized to the Christian County judges. He also presented several witnesses who testified to his good character before the Trial Commissioner. However, we also note the presence of aggravating factors: (1) dishonest or selfish motive in gaining a conviction (Brafman); (2) a pattern of misconduct (dishonesty); (3) multiple offenses; (4) refusal to acknowledge wrongful nature of conduct in Brafman; and (5) substantial experience in the practice of law (twenty-seven years).

In sum, Boling misused his current position of trust, attacked the prosecutorial discretion of the predecessor Commonwealth's Attorney and cast doubt on the integrity of the former prosecutor, the Christian Circuit Court and Jones's defense counsel. It is immaterial that Boling believed, given the eleventh-hour submission of the letter, that then-Governor Bevin would not see the letter, or that the pardon would not be granted. In addition, although Boling now attributes the political and subjective statements to the Joneses, even time constraints seem an unlikely reason for his failure to distinguish those from his own legal analysis in a relatively brief letter. As for the Brafman matter, we are likewise troubled by Boling's actions that led this Court to conclude the trial was "fundamentally unfair" and characterize Boling's conduct as "unnecessarily exploitative and dishonest." *Brafman,* 612 S.W.3d at 863.

23

ACCORDINGLY, IT IS ORDERED THAT:

1. Richard Boling is suspended from the practice of law in the Commonwealth of Kentucky for five years. The period of suspension shall commence on the date of entry of this Opinion and Order.

2. Boling resigned as Commonwealth's Attorney, effective February 28, 2023. If he has engaged or attempted to engage in the practice of law in any capacity outside of his role as Commonwealth's Attorney, the following shall apply:

   a. If he has not already done so, pursuant to SCR 3.390, Boling shall promptly take all reasonable steps to protect the interests of his clients, including, within ten days after the issuance of this order, notifying by letter all clients of his inability to represent them and of the necessity and urgency of promptly retaining new counsel and notifying all courts or other tribunals in which Boling has matters pending. Boling shall simultaneously provide a copy of all such letters to the Office of Bar Counsel;

   b. If he has not already done so, pursuant to SCR 3.390, Boling shall immediately cancel any pending advertisements, shall terminate any advertising activity for the duration of the term of suspension, and shall not allow his name to be used by a law firm in any manner until he is reinstated;

24

3. Pursuant to SCR 3.390, Boling shall not, during the term of suspension and until reinstatement, accept new clients or collect unearned fees;

4. In accordance with SCR 3.450, Boling shall pay all costs associated with these disciplinary proceedings against him, for which execution may issue from this Court upon finality of this Opinion and Order.

All sitting. VanMeter, C.J.; Bisig, Conley, Keller, Lambert, and Nickell, JJ., concur. Thompson, J., concurs in part and dissents in part by separate opinion.

ENTERED: June 15, 2023

_____
CHIEF JUSTICE VANMETER

THOMPSON, J., CONCURRING IN PART AND DISSENTING IN PART: I agree with the portion of the majority opinion upholding that some amount of discipline is appropriately imposed on Richard Boling for sending the inappropriate letter urging a pardon, but I vehemently disagree that Boling's alleged prosecutorial misconduct merits any (or more than only minimal) discipline based on the facts before us. Therefore, I disagree that a five-year suspension from the practice of law is the appropriate discipline to be imposed based on both charges and write separately to address my reasoning.

25

Near the end of the prosecution of Karen M. Brafman for first-degree and second-degree arson and six counts of attempted murder, of which four were charged as hate crimes, the Commonwealth Attorney, Richard Boling, had a conversation with arson investigator Detective Steward which was recorded on a "hot mic." Detective Steward stated he believed Brafman was intoxicated at the time of her arrest. At worst, this was a minor *Brady* violation[5] as Boling did not immediately inform Brafman's defense counsel.

However, there was a significant lapse of time between when the arson was believed to have occurred and when Detective Steward arrived to investigate and observed Brafman in a state of intoxication.[6] Therefore, an observation that Brafman was intoxicated then would have by no means indicated that Brafman was intoxicated when she set the fire. She could have ingested substances to become intoxicated sometime after setting the fire and still been suffering from those effects when Detective Steward arrived. Finally, there was proof submitted that Brafman had awareness of what she had done as after setting the fire she returned to her home, took a shower and was in the process of washing her kerosene-soaked clothing.

---

[5] *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

[6] I calculate this delay as follows: The fire was set at around 5:00-5:30 a.m. according to the victims. The report of the crime (rather than the report of the fire, which required a response by firefighters) was received at approximately 6:45 a.m. by the Kentucky State Police (KSP), and the KSP officers arrived at the scene at approximately 9:00 a.m. Sometimes after their arrival, Detective Steward questioned Brafman.

The alleged prosecutorial misconduct relates to Boling's closing argument in the trial. In *Brafman v. Commonwealth*, 612 S.W.3d 850 (Ky. 2020), our Court reversed Brafman's convictions for arson and murder and life-sentence and remanded to the trial court based upon the fact that Boling had actual knowledge that the defendant was very intoxicated when she was arrested and may have been entitled to a voluntary intoxication defense but for the fact that the defense attorney did not question the witnesses adequately (or cross-examine the detective with knowledge of the intoxication at all) to determine if Brafman was intoxicated.

Our Court in reviewing Boling's conduct in the direct appeal in *Brafman* did not take issue with the fact that Boling declined to do the defense's job for it and did not himself question the investigative detective specifically as to whether Brafman was intoxicated. The Court also acknowledged that Boling was technically correct in stating in the Commonwealth's closing argument that no one (other than Brafman) had testified that Brafman was intoxicated. The Court also did not fault the trial court for failing to give a voluntary intoxication instruction given the state of the evidence. *Id.* at 859.

This was not a case in which the prosecutor argued facts not in evidence or misstated the evidence; Boling accurately stated the evidence. Our Court *only* faulted Boling for giving a closing argument that while technically correct based on the evidence, was incorrect as it implied that the actual facts were different than he knew them to be. *Id.* at 861-62. What Boling was exactly

27

required to do to conduct a proper closing argument under these circumstances is unclear.

Based on this closing argument, Boling was then subject to discipline by the Kentucky Bar Association (KBA) for "knowingly making a false statement" and engaging in dishonest conduct. Such discipline ignores that we have an adversarial system that relies on both sides vigorously advocating for their respective positions.

"The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free." *Herring v. New York*, 422 U.S. 853, 862 (1975). "The system assumes that adversarial testing will ultimately advance the public interest in truth and fairness." *Polk Cnty. v. Dodson*, 454 U.S. 312, 318 (1981).

"[V]igorous representation [on both sides] follows from the nature of our adversarial system of justice" and should result in truth and fairness. *Penson v. Ohio*, 488 U.S. 75, 84 (1988). Prosecutors' "vigorous and fearless performance of [their duties] . . . is essential to the proper functioning of the criminal justice system." *Imbler v. Pachtman*, 424 U.S. 409, 427–28 (1976). Similarly, it is the duty of a defense attorney to "use every honorable effort to secure for the defendant a fair trial[.]" *Goff v. Commonwealth*, 241 Ky. 428, 44 S.W.2d 306, 308 (1931).

Prosecutors should "prosecute with earnestness and vigor" and "strike hard blows" but not "foul ones" and have a "duty to refrain from improper

28

methods calculated to produce a wrongful conviction" as well as "use every legitimate means to bring about a just one." *Berger v. United States*, 295 U.S. 78 (1935). Prosecutors "should in an honorable way use every power that [they have], if convinced of the defendant's guilt, to secure his conviction[.]" *Goff*, 44 S.W.2d at 308.

There is nothing in Boling's conduct before the trial court to establish that he acted unethically as an attorney in fulfilling his designated prosecutorial role. He argued about the evidence that was actually before the trial court which he rightfully believed supported a conviction and did not warrant a defense, rather than the evidence that was not before the trial court. While the "hot mic" exchange was unseemly, it only relates to the discipline in that it provides a basis for the KBA's awareness that Boling, at the time of that conversation, knew someone else's opinion rather than just Brafman's own testimony might support her claim of voluntary intoxication.[7] What evidence came before the trial court was the product of both Boling's efforts in serving his role as prosecutor, and Brafman's own attorney's efforts in fulfilling the role of defense counsel.

---

[7] This exchange does not necessarily indicate that Boling had actual knowledge that Detective Steward believed Brafman was "out of her fricking mind" prior to him telling Boling that during the break. It is also equally consistent with Boling suspecting that Brafman may have been observed to be intoxicated by Detective Steward, but not actually knowing if this was so, and thus strategically choosing not to question him on this matter. This is similar to a defense attorney forgoing asking a defendant before the trial "Did you do it?" so as to not be put in a position of knowingly presenting false evidence at trial. In any event, Boling's discipline is not premised on him engaging in a *Brady* violation. Indeed, the knowledge that Brafman was intoxicated and investigating officers should have observed this, was uniquely within her own knowledge or reasonably inferable.

Of course, the adversarial system breaks down if defense counsel provides ineffective assistance, which "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington,* 466 U.S. 668, 686 (1984). But the solution to ineffective assistance of defense counsel is not for the Commonwealth Attorney to instead become the defendant's advocate. As acknowledged in *Brafman,* 612 S.W.3d at 861, "[t]he Commonwealth is not obligated to make the defendant's case for her." *See also Farris v. Commonwealth,* 836 S.W.2d 451, 455 (Ky. App. 1992) (explaining "the Commonwealth is not required to investigate the case for the appellant"), *overruled on other grounds by Houston v. Commonwealth,* 975 S.W.2d 925, 931 (Ky. 1998). The majority's opinion is distorting the Commonwealth Attorney's role by requiring this sort of advocacy for the defense.

Boling takes responsibility by conceding that he should not have objected to the voluntary intoxication instruction. Boling's advocacy for the Commonwealth during Brafman's trial was appropriate given the evidence actually admitted at trial, his reasonable belief that Brafman took deliberate and intentional steps to both set the fire and conceal her guilt that were at odds with her claim of intoxication, and his duty to seek a conviction where he sincerely believed in her guilt.

Having a plan to raise a voluntary intoxication defense, defense counsel should have investigated who might be able to corroborate his client's testimony, formed a plan to produce the needed evidence at trial, and then

30

executed such a plan, which could have included cross-examining witnesses likely to have such knowledge and/or calling witnesses on behalf of Brafman known to have such knowledge.[8] The responsibility for Brafman's failure to obtain an instruction on voluntary intoxication should be laid squarely at the feet of her defense attorney who failed to appropriately develop the evidence based on information which should have been available to the defense attorney from the records of her arrest and Brafman herself. It is fundamentally unfair to sanction Boling based on Brafman's counsel's failures.

Defense counsel's lapse while showing ineffectiveness given the strategy decided upon, was not necessarily prejudicial as it is well known that in Kentucky that receiving a voluntary intoxication instruction to negate a required state of mind pursuant to KRS 501.080(1) is rarely of any benefit to a defendant in receiving a conviction to a lesser included offense.[9]

---

[8] Boling indicated to Detective Steward his belief that perhaps the defense attorney thought to get such evidence admitted through cross-examination of the victim, but that Boling was not calling the victim. If this was the defense strategy, it was a risky one that ultimately proved to be a costly error.

[9] As illustrative of this understanding (although not authoritative in any respect) are two cases which relay counsels' reasoning behind strategically deciding against trying to raise a voluntary intoxication defense. In *Hodge v. Commonwealth*, 2017-CA-000950-MR, 2018 WL 3202820 (Ky. App. June 29, 2018) (unpublished),

> Hon. Sam Cox, who was part of Hodge's defense team, testified that the team researched the voluntary intoxication defense, spoke with other attorneys about the defense, and talked to Hodge about how it is rarely a successful defense and how it tends to be an aggravator. . . . Hon. Valetta Browne . . . testified that she personally has never seen a case where the defense of voluntary intoxication was successful.

In *Mason v. Commonwealth*, 2016-CA-001898-MR, 2018 WL 4050747, at *2 (Ky. App. Aug. 24, 2018) (unpublished), counsel testified that "[t]o emphasize [the fact of the

I personally will not agree to censure an attorney for a robust closing argument confined to the evidence presented to the jury which was made in good faith and in furtherance of his responsibility to prosecute the guilty. Such discipline could have a chilling effect on attorneys serving as vigorous advocates, especially when their adversary is seemingly outmatched. While I understand that Boling's conduct may be viewed differently than that of any other attorney, because of his duty to the public, the legislature declined to impeach him for such conduct pursuant to Kentucky Constitution § 68 and, as an ordinary attorney, he is no longer in such a role.[10]

Originally, we rejected a previous agreement that Boling would be disciplined through a 120 days' suspension with 60 days to serve. Boling has now resigned as Commonwealth Attorney, effective February 28, 2023, and has reached a new agreement with the KBA that he will not oppose the five years of suggested disciplinary suspension. Boling's resignation is a substantial punishment in and of itself, and a five-year suspension not is necessary as the complained of conduct was only possible based on his previous office. Boling's advocacy as a Commonwealth Attorney based on using official letterhead

---

defendant drinking] would, in counsel's opinion, serve only to inflame the jury with little chance of succeeding on the voluntary intoxication defense."

[10] I do not, of course, make any argument that the Legislature's failure to impeach Boling precludes any discipline based on his general fitness to practice law. *See Commonwealth v. Stump*, 247 Ky. 589, 57 S.W.2d 524, 525-27 (1933) (discussing that discipline of a Commonwealth Attorney for unfitness to practice law, resulting in his disqualification to serve as a Commonwealth Attorney, is not precluded by the fact that he could have alternatively been removed from office through impeachment).

cannot be repeated; he is also no longer in a position to act too vigorously on behalf of the Commonwealth in a prosecution.

As writing a letter on official stationery which contains false statements is the only conduct I would substantively punish, the overall punishment is excessive. Accordingly, I concur in part and dissent in part.